STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

ENDORSED
FILED IN MY OFFICE THIS

MAY 05 2011

*Quanita M. Duran*
CLERK DISTRICT COURT

THE ESTATE OF KATHERINE J.
GONZALES, SCOTT BOX, individually and
as Personal Representative, and RUSSELL
BOX, children of Katherine J. Gonzales,
       Plaintiffs,

CV 201104985

vs.       Case No. _____

AAA LIFE INSURANCE COMPANY,
a subsidiary of AAA AUTO CLUB,
GENERAL ELECTRIC COMPANY,
GENERAL ELECTRIC PENSION
TRUST, GENERAL ELECTRIC SAVINGS
& SECURITY, METROPOLITAN LIFE
INSURANCE (Plan Administrator; ERISA),
NEW MEXICO DEPARTMENT OF
HEALTH, UNIVERSITY OF NEW MEXICO,
OFFICE OF MEDICAL INVESTIGATOR, and
MICHAEL A. PETERS, attorney, individually and
PETERS & ASSOCIATES, PA
       Defendants.

TED BACA

SHANNARA GREEN

## COMPLAINT FOR NEGLIGENCE, GROSS NEGLIGENCE, BREACH OF CONTRACT, BAD FAITH INSURANCE PRACTICE, MANDAMUS, AND PUNITIVE DAMAGES

COMES NOW Plaintiffs in the captioned matter for their petition state as follows:

### STATEMENT OF FACTS COMMON TO ALL COUNTS

1. AAA Life Insurance Company (AAA), a subsidiary of AAA Auto Club, and General Electric Company (GE) are businesses, which at the

EXHIBIT A

time of the culpable conduct of which Plaintiffs complain herein occurred, were active and doing business in Bernalillo County, New Mexico. Defendant Metropolitan Life Insurance (Met Life) is the (ERISA) Plan administrator for the GE life insurance policy of its employee and the seller of the insurance property, who negligently and grossly negligently failed to pay life insurance benefits to the legal beneficiary, negligently relying upon hearsay information to pay death benefits (pension and securities/financial benefits) to the wrong beneficiary. Met Life does business in the State of New Mexico.  Defendant Michael A. Peters, attorney at law, is a resident and domiciliary of Bernalillo County, New Mexico and was the attorney for the Estate of Katherine J. Gonzales, Neal Mitchell, Personal Representative at the time the wrongful and injurious damages occurred to the heirs and beneficiaries of the Estate of Katherine J. Gonzales.  Mr. Peters represented the Estate of Katherine J. Gonzales by and through his law firm Defendant Peters & Associates, PA, licensed and doing business in Albuquerque, New Mexico, Bernalillo County.

2. Plaintiff Scott Box is the Personal Representative of the Estate of his deceased mother, Katherine J. Gonzales, representing the Estate and the interests of his brother, Russell Box.  Katherine was murdered by her husband Wayne Gonzales on March 2, 2009. Before Katherine died,

her husband Wayne died instantly by shooting himself in the head. Wayne died before Katherine who was taken by ambulance to the hospital. Wayne shot Katherine six times and then shot himself in the head, killing himself instantly. The homicide/suicide occurred at the residence of Mr. & Mrs. Gonzales located within Bernalillo County, in Albuquerque, New Mexico.

3. Wayne Gonzales unquestionably predeceased his victim, his wife Katherine J. Gonzales and was pronounced dead at the residence by Albuquerque Fire Department Rescue shortly after 7:30 a.m. Albuquerque Police Department Officers also witnessed the scene and the dead Wayne Gonzales and the taking of Katherine J. Gonzales to the hospital by ambulance.

4. Katherine survived Wayne and was taken by Albuquerque Ambulance to the University of New Mexico Hospital, where she was later pronounced dead at 8:21 a.m.

5. Katherine did survive Wayne for all legal purposes, including insurance and survivor benefits.

6. Based on the facts and circumstances, all Defendants knew or should have known that Wayne predeceased Katherine.

7. Michael A. Peters, attorney, on behalf of his client the Estate of Katherine J. Gonzales and brother of Katherine, Neal F. Mitchell, Personal

Representative of Katherine's Estate, as lawyer for the heirs and the beneficiaries of her Estate, intentionally or grossly negligently filed documents under oath with the Bernalillo County State District Court, in Cause No. PB-2009-00162, stating that the decedent, Katherine J. Gonzales, had no children, intentionally or grossly negligently omitting to inform the Court that Katherine had two children that survived her. In a Court hearing, Mr. Peters told the Court he thought the children had been adopted. He knew there were children of Katherine J. Gonzales. It was malpractice and below the standard of care and duty of attorneys in the State of New Mexico, Bernalillo County to file such a false untrue pleading misleading the Judge and the Court. As attorney for the Estate, Mr. Peters had a statutory duty to the heirs to protect them and their interests. He also had a duty to prevent the heirs, Katherine's two sons, Scott and Russell, from being defrauded by Katherine's brother in law, Carl Gonzales.

8. Katherine and Wayne died intestate.

9. There were no children from the marriage of Katherine and Wayne. Scott and Russell were sons of Katherine J. Gonzales from a former marriage.

4

## COUNT I, PROFESSIONAL NEGLIGENCE, GROSS NEGLIGENCE, PUNITIVE DAMAGES

10. Plaintiff incorporates by reference all other parts of these pleadings.

11. Defendant Michael A. Peters and his professional corporation represented the Estate of Katherine J. Gonzales. Katherine J. Gonzales', brother, Neal F. Mitchell, a resident of Texas, was improvidentially declared Personal Representative of the Estate as the result of a professionally negligent application for informal probate filed by Mr. Peters with the Court. Mr. Peters knew Katherine J. Gonzales had children although the verified pleading filed with the Court denied there were any children. In that verified pleading, verified by Mr. Peters' client's representative Neal Mitchell, the Estate of Katherine J. Gonzales avoided the need to give notice to the Plaintiffs herein, Scott and Russell Box, the two sons of Katherine and nephews of Katherine's brother, Neal Mitchell, Personal Representative. By the time Plaintiffs discovered an Estate existed for their deceased mother, much of the property, assets and financial worth of Katherine J. Gonzales had been dissipated, fraudulently obtained or was otherwise illegally acquired by Carl Gonzales without any action whatsoever by Mr. Peters to protect the Estate of Katherine J. Gonzales nor her heirs which caused enormous losses.

5

12. Michael A. Peters knew or should have known that Wayne Gonzales had predeceased Katherine J. Gonzales, a fact generally known by all those who investigated the deaths and by the information in the Albuquerque Police Department's written report of the homicide/suicide, yet he did nothing to protect her Estate and the heirs of Katherine J. Gonzales. Mr. Peters did nothing to prevent Carl Gonzales, brother of Wayne Gonzales, from wrongfully allowing personal and real property to be destroyed and devalued and from obtaining life insurance proceeds, pension account funds, and stock and securities monies, in derogation of the beneficial and heredity rights of Katherine J. Gonzales' heirs, her sons, Scott and Russell.

13. Michael A. Peters made no attempt whatsoever to investigate the issue concerning the surviving children of Katherine J. Gonzales. The Application for Informal Probate (itself an act of negligence because children existed and were the proper persons to be appointed Personal Representative–without their permission a formal Estate was necessary) of the Estate of Katherine J. Gonzales (an intestate succession because Katherine had no will) was a fraud upon the Plaintiffs and the Court as it stated there were no children. (Even if the two sons of Katherine had been

killed, lost or adopted it would have been the duty of Mr. Peters to identify them to the Court in his application and to state what was their status).

14. Michael A. Peters made no attempt whatsoever to preserve the Estate of Katherine J. Gonzales nor to prevent the brother of Wayne Gonzales from dissipating assets belonging to Katherine J. Gonzales her heirs and Estate.

15. Defendant Michael A. Peters made no attempt whatsoever to inform AAA, GE, GE Pension Trust, and GE Savings & Security that his client, Katherine J. Gonzales' Estate, was entitled to the benefits of life insurance, pension and all financial accounts as the time of death of his deceased client was indubitably subsequent to that of Wayne Gonzales, whether the insurance went through Probate or passed, *sui generis*, to beneficiaries. The fact Wayne predeceased Katherine is clearly stated in reports by all the Police Officers and Albuquerque Fire Department Medical Emergency personnel on the scene. The police reports also state that Carl Gonzales was present at the homicide scene, at the decedents' home when his brother Wayne was declared dead on March 2, 2009, and Katherine J. Gonzales, who was alive, was taken to the hospital. A simple reading of the Albuquerque Police Department report of Katherine's death would have informed Mr. Peters of the fact Katherine J. Gonzales survived

her murdering husband Wayne who by shooting himself in the head died instantly and was pronounced dead at the scene while Katherine was taken by ambulance to the hospital. That same simple reading of the police report pages would have also told Mr. Peters that Carl Gonzales was at the scene, saw his brother dead and Katherine alive, taken away by ambulance. Plaintiffs assume Mr. Peters did not read the police report as he did nothing to protect Katherine's Estate and her heirs. Even if life insurance proceeds pass outside of probate, Mr. Peters had a duty to prevent the fraud upon the heirs of Katherine J. Gonzales.

16. The monetary damages to the Plaintiffs is in the multiple hundreds of thousands. As Mr. Peters' conduct was not only negligent, but grossly negligent, and/or maliciously intentional, punitive and exemplary damages should be awarded to Plaintiffs in multiples of the referenced monetary damages.

## COUNT II-BAD FAITH AND BREACH OF CONTRACT

17. Plaintiffs incorporate by reference all other parts of these pleadings.

18. Defendant AAA in bad faith and in gross breach of contract paid life insurance proceeds to the contingent beneficiary, Carl Gonzales. Katherine J. Gonzales was the primary beneficiary on the policy insuring

Wayne's life. As Katherine had survived Wayne, she was entitled to the benefits and proceeds. As the acts of AAA were grossly negligence, punitive damages should be awarded to Plaintiffs.

19. GE in bad faith and in gross breach of contract, negligence and or intentional violation of ERISA and all emoluments, grossly negligently employed Met Life to administer the life insurance policy benefits and paid life insurance proceeds and other pension and security/financial assets to the wrong person. Katherine J. Gonzales was the primary beneficiary on the policy insuring Wayne's life. As his survivor and primary beneficiary, Katherine J. Gonzales was entitled to all of the assets, securities, pension benefits and insurance benefits proceeds. Even if Katherine J. Gonzales had predeceased her murdering Husband Wayne, he could not receive her death insurance benefits because he criminally killed her.

20. GE Pension Trust in bad faith and in gross breach of contract paid Wayne's pension account funds to the contingent beneficiary, Carl Gonzales. Katherine J. Gonzales was the primary beneficiary on Wayne's pension account. As Katherine had survived Wayne, she was entitled to all the benefits and proceeds.

21. Upon information and belief, GE Savings & Security has refused to provide information regarding GE Savings & Security financial

assets belonging to Katherine J. Gonzales, individually and as heir of Wayne Gonzales in bad faith and in breach of contract (Katherine is the third party beneficiary of pension accounts and financial assets which would have been paid to Wayne, his stocks and securities account funds). Those assets were apparently paid to the contingent beneficiary. Katherine J. Gonzales was the primary beneficiary on Wayne's GE stocks and securities account. As Katherine had survived Wayne, she was entitled to the benefits and proceeds. Damages suffered by Plaintiffs are the amounts of money wrongfully paid to others or unpaid to Plaintiffs. As the culpable actions of the Defendants in this Count were grossly negligent or maliciously intentional, punitive damages should be awarded.

## COUNT III-GROSS NEGLIGENCE

22. Plaintiffs incorporate by reference all other parts of these pleadings.

23. AAA, GE, GE Pension Trust, and GE Savings & Security negligently failed to reasonably or prudently investigate whether Wayne predeceased Katherine although all knew or should have known Katherine J. Gonzales was murdered by her husband Wayne Gonzales, who committed suicide and damaged Plaintiffs by misdirecting funds to which Plaintiffs were/are entitled.

24. AAA, GE, Met Life, GE Pension Trust, and GE Savings & Security grossly negligently relied on erroneous death certificates facts provided with intent to mislead. The intrinsic content of those certificates, hearsay as a matter of law, contained sufficient conflicting "red flag" information which Defendants, acting reasonably and prudently, should have known (or knew) the homicide suicide causes of death statements upon the two death certificates unequivocally demanded further inquiry. Instead, Defendants imprudently and unreasonably grossly negligently accepted the hearsay information thereupon rather than doing minimal investigation into the actual facts and true times of death of the murder/suicide. These entities knew or should have known that the death certificates contained incorrect erroneous information as to the time of death of each deceased individual. A simple reading of Albuquerque Police Department reports, reports which legally contain more accurate valuable facts concerning the murder suicide (according to the probate statutes–which are not applicable to the insurance products, but which statutes may be applicable to other financial assets). The overwhelming conclusions of all of the investigations, the Albuquerque Police Department reports, recorded statement of Carl Gonzales who was present at the scene saw his brother Wayne dead in a chair from a self-inflicted gunshot

to his head by his own hand, and who saw Katherine J. Gonzales taken to the hospital, the Albuquerque Fire Department paramedics report, and ambulance attendants' report, all certify Wayne Gonzales died before Katherine J. Gonzales. She was widowed for a period of time.

It is also common knowledge that death certificates in New Mexico state the time of death on a certificate when a physician from the Office of the Medical Investigator inspects the body, determines death and takes possession of the body and declares the person deceased, not the time the person dies (unless, as was the case with Katherine J. Gonzales, a private physician at the hospital, declared her time of death, which was after Wayne had earlier died by suicide). The "coroner", the State Medical Investigator, puts the time of death at the time he finally is able to get to the scene and view the body (in this case hours after death), and take possession of the body, probably after the body had been taken to the funeral home.

### COUNT IV–MANDAMUS AND CLAIMS SPECIFIC TO THE OFFICE OF THE MEDICAL INVESTIGATOR, NEW MEXICO DEPARTMENT OF HEALTH, UNIVERSITY OF NEW MEXICO

25.  Plaintiffs incorporate by reference all other parts of these pleadings.

26. This action requests the Court to enter a Writ of Mandamus to order the Office of the Medical Investigator, New Mexico Department of Health or the University of New Mexico to address the negligent arbitrary certificate of death form which is not created "in the form required by law" (see NMSA 1978, § 24-11-6) and to ensure no person nor entity is harmed by any false information or ambiguity therein and to order these Defendants to pay damages for all damages, injury and loss occasioned by the illegal death certificate form, and attorney fees, in addition to those damages awarded from Defendants Peters, GE, GE Pension Trust, GE Savings & Security, Met Life, and AAA.

27. Alternatively, and/or in addition to damages other Defendants will be required to pay to Plaintiffs, Plaintiffs seek all losses and damages from these Office of the Medical Investigator-related Defendants for the grossly negligent factual misinformation communicated wrongfully by the certificate of death form.

28. The court-ordered Writ of Mandamus should also demand that these Office of the Medical Investigator-related Defendants, create a death certificate form "required by law" containing accurate information and appropriate notation when the information is estimated. Further, the Writ of Mandamus should direct these Defendants to assist the Plaintiffs in the

captioned matter by communicating all the true and correct factual information concerning the death and domestic status of Wayne Gonzales and Katherine J. Gonzales, and specifically, that Wayne Gonzales predeceased the wife he murdered, Katherine J. Gonzales, a widow (he was not a widower at the time of his death). Alternatively, these Defendants should be ordered to declare the form utilized was wrong and contained misinformation. Further, the Court should order that statutes and rules regarding use of death certificates should be suspended until this State has created a form "required by law" which contains only accurate information.

29. There is no remedy at law other than Mandamus to stop the present death certificates from being misused and from injuring parties such as Plaintiffs herein. Plaintiffs have attempted through written notice, physical appointments, and many telephone conversations to make the Health Department, Vital Statistics, Vital Records, Office of the Medical Investigator stop using a form which is not "required by law" and to give notice and awareness of the harm created by the negligent erroneous form and the deleterious effect the present system and form of death certificate created for the survivors of Katherine J. Gonzales. Plaintiffs have not been successful in attempting to discover the person or entity who would have

the power to correct the form as "required by law" and to help clear the factual information about the time of death of Wayne and Katherine J. Gonzales and who (or what entity) is responsible for creation and/or possible alteration of the death certificate to correctly state crucial information.

30. There is no plain, speedy adequate remedy in the ordinary course of law.

## COUNT V-UNFAIR INSURANCE PRACTICES ACT VIOLATIONS, UNFAIR TRADE PRACTICES ACT VIOLATIONS, DAMAGES, PUNITIVE DAMAGES

31. Plaintiffs incorporate by reference all other parts of these pleadings.

32. Plaintiffs have been significantly harmed by the actions, inactions, false certification, and other intentional or negligent processes used by Defendants to injure the inheritance of the Plaintiffs and their rights as beneficiaries of insurance proceeds, financial assets, and retirement/pension funds. The culpable actions of the Defendants as described in this Complaint, violate the provisions of the Insurance Trade Practices and Fraud statutes NMSA 1978, §§ 59A-16-1 et seq.

33. Defendants AAA and GE (and all related entities, including Met Life) were grossly negligent in failing to review and investigate other

information and documentation besides a death certificate to correctly ascertain the relative times of death of Wayne Gonzales, who, unequivocally died before Katherine J. Gonzales.

34. As the culpable conduct of all Defendants was intentional, malicious and/or grossly negligent, punitive and exemplary damages should be allowed in an amount of sufficient significance to alter and deter such conduct in the future.

35. It is a violation of NMSA 1978, §§ 59A-16-1 through 59A-16-30 (insurance trade practices and fraud statute), for failing to properly investigate a claim, disregarding all competent evidence of death in a homicide/suicide situation where a prima facie initiatory investigation would have clearly demonstrated to the insurance underwriters that Wayne Gonzales had unquestionably predeceased Katherine J. Gonzales. The conduct of Defendants also violates NMSA 1978, §§ 57-12-1 et seq. as unfair trade practices. In addition to compensatory, statutory and punitive damages, Plaintiffs should be awarded attorney fees.

## VIOLATION OF ERISA 29 U.S.C. §§ 1001 *ET SEQ.*, ALTERNATIVELY

36. Plaintiffs incorporate by reference all other parts of these pleadings.

37. Both GE and Met Life are liable for their negligence as plan administrators and fiduciaries as well as all others whose negligence caused the damages to the Plaintiffs as defined by ERISA's civil claim provisions for ERISA violations and equitable remedies. 29 U.S.C. § 1132. Even if it is accepted, *arguendo,* a properly authenticated death certificate might be *prima facie* evidence of elements surrounding a death, the murder/homicide of Katherine J. Gonzales by her husband Wayne Gonzales should have put any reasonable prudent person on notice that insurance death proceeds should be analyzed carefully before paying the Estate, Personal Representative brother of the killer, Wayne Gonzales. ERISA requires:

(29 U.S.C. § 1001 *et seq.*, §1104) state: **(a) Prudent man standard of care
(1)** Subject to sections 1103 (c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
**(A)** for the exclusive purpose of:
**(i)** providing benefits to participants and their beneficiaries; and
**(ii)** defraying reasonable expenses of administering the plan;
**(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;"**

This is a civil ERISA action alternative to those claims above. This action is the result of a final wrongful denial by GE/Met Life of payment of life insurance benefits to Plaintiffs as required by ERISA, Federal and State law, and Equity. 29 U.S.C. § 1132.

38. GE was negligent to choose Met Life as insurer under the Plan and the Plan Administrator and as provider of the life insurance policies relevant herein. GE knew or should have known the conflict of interest of Met Life would cause damages to parties in interest such as Katherine J. Gonzales and her heirs.

39. GE and Met Life, individually or in concert, the Plan Administrator and fiduciaries, negligently denied life insurance benefits to Plaintiffs without having prudent plans to determine beneficiaries, time of death of decedents, manner of death, etc., especially when, as herein, the death of Katherine J. Gonzales was a murder/homicide perpetrated by the person/participant/insured "retired employee" who had killed himself. Because of GE's and Met Life's negligent conduct, the murderer/insured/ retired employee's brother benefitted from and wrongfully enjoyed the fruits of Wayne's dastardly deeds.

40. There exists no prudent regulations nor any plan process identified by GE and Met Life through which the proper life insurance beneficiaries could be determined in any case, and more injuriously, in this case where GE and Met Life knew or should have known Katherine J. Gonzales was murdered by her husband, Wayne Gonzales, who shot himself in the head, expiring immediately, before Katherine J. Gonzales.

The homicide/suicide perpetrated by Wayne Gonzales was in the Albuquerque Journal Newspaper. GE was then an active resident of New Mexico, Bernalillo County. GE and Met Life knew, should have known and/or should have had in place a method to determine the proper beneficiaries of life insurance and all other assets held by GE and Met Life inuring to the benefit of Katherine J. Gonzales or her heirs/beneficiaries. GE and Met Life should have had in place a method to determine Katherine J. Gonzales was murdered by her husband, Wayne Gonzales and that the law of New York or wherever GE and Met Life claim as home, undoubtedly has a law which prevents murderers from receiving life insurance benefits from the death of their victims such as Katherine J. Gonzales the homicide victim of her husband, Wayne Gonzales.

41. As the culpable conduct of GE and Met Life was so grossly negligent, Plaintiffs should be awarded statutory and exemplary damages in addition to attorney fees.

WHEREFORE Plaintiffs pray for Judgment against the Defendants in an amount to compensate Plaintiffs for all damages, losses and injuries, direct, indirect, special and consequential, statutory, for attorney fees, injunctive relief temporary, preliminary and permanent, mandamus relief and damages for the injuries caused by the inappropriate negligent and

intentional malfeasance which added to the injuries to Plaintiffs, for punitive and exemplary damages against all Defendants against whom punitive and exemplary damages are recoverable, for attorney fees from all entities and for all other relief deemed just, equitable, and appropriate in the premises.

Respectfully submitted,

_____
Peter Everett IV
9300 Fourth St. NW
Albuquerque, NM 87114
(505)899-4343