**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF KATHERINE J.
GONZALES, SCOTT BOX, individually and
As Personal Representative, and RUSSELL
BOX, children of Katherine J. Gonzales,

  Plaintiffs,

vs.                  No.  1:11-cv-00486-ACT-WDS

AAA LIFE INSURANCE COMPANY,
A subsidiary of AAA AUTO CLUB,
GENERAL ELECTRIC COMPANY,
GENERAL ELECTRIC PENSION TRUST,
METROPOLITAN LIFE INSURANCE
(Plan Administrator; ERISA), NEW MEXICO
DEPARTMENT OF HEALTH, UNIVERSITY
OF NEW MEXICO, OFFICE OF MEDICAL
INVESTIGATOR, and MICHAEL A. PETERS,
ATTORNEY, individually and PETERS &
ASSOCIATES, P.C.,

  Defendants.

## MOTION TO DISMISS THE PLAINTIFFS' STATE LAW CLAIMS OF METLIFE, GE, AND THE GE PLANS

  Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Metropolitan Life Insurance Company ("MetLife"), General Electric Company ("GE"), and the General Electric Pension Trust and the GE Savings and Security Program, which has been incorrectly named as "General Electric Savings & Security," (collectively the "GE Plans") submit this motion to dismiss the state law claims of plaintiffs Scott Box and Russell Box ("collectively "the Boxes") and the Estate of Katherine J. Gonzales ("the Estate").

**I.    INTRODUCTION.**

The claims of the Boxes and the Estate against MetLife, GE, and the GE Plans relate to group life insurance and pension benefits under the GE Plans.  The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, governs the GE Plans.  The Boxes and the Estate contend that MetLife, GE, and the GE Plans unreasonably paid certain life insurance and pension benefits under the GE Plan to the wrong beneficiary, and have asserted claims against MetLife, GE, and the GE Plans based on state law theories of breach of contract, bad faith, gross negligence, the New Mexico Unfair Insurance Practices Act, and the New Mexico Unfair Trade Practices Act.  The Boxes and the Estate also seek the recovery of punitive damages.  In addition to their state law claims, the Boxes and the Estate has asserted a benefits claim under ERISA.

Two doctrines of federal preemption limit the assertion of state law claims relating to ERISA-governed benefits, and both of these preemption doctrines bar the state law claims of the Boxes and the Estate.  Complete preemption bars the application of any state law that relates to an employee benefit plan.  29 U.S.C. § 1144.  The state law claims of the Boxes and the Estate directly relate to benefits under the ERISA-governed GE Plans, and fall within the scope of complete preemption.  Conflict preemption bars the assertion of any state law claim that conflicts with ERISA's exclusive remedial scheme.  29 U.S.C. § 1132(a) provides the exclusive remedies available to beneficiaries, like the Boxes and the Estate, of ERISA-governed benefits.

The Tenth Circuit has repeatedly held that conflict preemption bars the sorts of state law causes of action that the Boxes and the Estate have asserted against MetLife, GE, and the GE Plans in this case.

**II.     PERTINENT FACTS BASED ON THE ALLEGATIONS IN THE COMPLAINT.**

1.     The Boxes and the Estate are residents of New Mexico.  The Boxes are the sons of Katherine J. Gonzales (Mrs. Gonzales").  *See* Complaint, ¶¶ 1-2 [ECF No. 1-1].

2.     Plaintiff Scott Box also is the Personal Representative of the Estate.  *Id*.

3.     Mrs. Gonzales is a deceased person who resided in Bernalillo County New Mexico at the time of her death on March 2, 2009.  *Id*. ¶¶ 2-4.

4.     The Boxes and the Estate have alleged that MetLife is "the (ERISA) Plan administrator for the GE life insurance policy of its employees …."  *Id.* ¶ 1.

5.     Wayne Gonzales ("Mr. Gonzales") is a former employee of GE.  *Id.*

6.     Mr. Gonzales was a participant in the group life insurance and pension plans under the GE Plans.  *Id*. ¶¶ 1, 19-21.

7.     MetLife is the claim administrator and the insurer of life insurance benefits payable under the GE Plans.  *Id.* 1, 19, 37-41.

8.     The Boxes and the Estate contend that they were entitled to receive life insurance and pension benefits under the GE Plans, which were paid to Carl Gonzales, the brother of Mr. Gonzales.  Complaint, ¶¶ 7, 11, 19, 20, 21, 24.

9.     ERISA, 29 U.S.C. §§ 1001, *et seq*., governs the GE Plans.  *Id.* ¶¶ 1, 19, 37-41.

10. The claims of the Boxes and the Estate against MetLife, GE, and the GE Plans seek relief relating to benefits available under the GE Plans, and, therefore, the claims of the Boxes and the Estate against MetLife, GE, and the GE Plans all relate to an employee benefit plans that ERISA governs. *Id.* ¶¶ 1, 19, 37-41.

11. The Boxes and the Estate have asserted a claim for relief under ERISA against MetLife, GE, and the GE Plans. *Id.* ¶¶ 37-41.

### III. ARGUMENT.

#### A. The State Law Claims Against MetLife, GE, and the GE Plans in the Complaint Must Be Dismissed Under the Supreme Court's Heightened Pleading Standard for Complaints, Which Rejects "Formulaic" Recitations of Facts in Favor of Factual Allegations that "Plausibly Suggest an Entitlement to Relief."

The Supreme Court has recently considered the principles relevant to a motion to dismiss in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court directed the federal courts to apply a heightened pleading standard to avoid permitting "anemic cases" to go forward. *Twombly*, 550 U.S. at 559. In *Ashcroft*, the Court reiterated that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action *will not do*.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555) (emphasis added). A claim will survive a motion to dismiss only if it "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

The Supreme Court drew an important distinction between factual allegations and legal conclusions. The Court ruled that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Horizon AG-Products v. Precision Sys. Eng'r, Inc.*, No. CIV 09-1109 JB/DJS, 2010 WL 4054131, at *4 (D.N.M. Sept. 28, 2010). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citing *Papason v. Allain,* 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 129 S. Ct. at 1949; *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010); *Phillips v. Bell*, 365 Fed. Appx. 133, 137 (10th Cir. 2010). The Supreme Court instructed courts first to identify "the allegations in the complaint that are not entitled to the assumption of truth" and then to "consider the factual allegations in . . . [the] complaint to determine if they plausibly suggest an entitlement to relief." *Ashcroft*, 129 S. Ct. at 1951. A complaint will survive a motion to dismiss only if it "states a plausible claim for relief." *Id.* at 1950; *Phillips*, 365 Fed. Appx. at 138. As will be shown below, the allegations relating to the state law claims in the complaint have not "nudged [the state law] claims [against MetLife, GE, and the GE Plans] across the line from conceivable to plausible," and therefore, the Court should dismiss the state law claims against MetLife, GE, and the GE Plans in the complaint. *Twombly*, 550 U.S. at 570; *Bixler*, 596 F.3d at 762; *Horizon AG-Products*, 2010 WL 4054131 at * 13; *Maher v. Durango Metals. Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998); *see also BC Services,*

*Inc. v. Wade*, 311 F. Supp. 2d 1045, 1047 (D. Colo. 2004) (dismissing state claims based on ERISA preemption); *Mein v. Pool Co. Disabled Int'l Employee Long Term Disability Benefits Plan*, 989 F. Supp. 1337, 1344-45 (D. Colo. 1998) (same).

### B. The Boxes and the Estate Have Acknowledged That ERISA Governs the Group Policy, and Asserted a Claim Under ERISA.

The Boxes and the Estate have acknowledged that ERISA governs the GE Plans. Complaint, ¶¶ 1, 19, 37-41 [ECF No. 1-1]. Moreover, the Boxes and the Estate have asserted a claim for relief under ERISA. *Id.* ¶¶ 37-41. Consequently, there can be no dispute that ERISA governs the claims of the Boxes and the Estate against MetLife, GE, and the GE Plans.

### C. Both Complete Preemption and Conflict Preemption Bar the State Law Claims Against MetLife, GE, and the GE Plans, and, Therefore, the Court Should Dismiss Those State Law Claims With Prejudice.

There are two types of federal preemption applicable here—complete preemption under 29 U.S.C. § 1144 and conflict preemption. *See generally Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1153-1157 (10th Cir. 2004). Both complete preemption and conflict preemption bar the state law claims against MetLife, GE, and the GE Plans for breach of contract and bad faith (Complaint, ¶¶ 18-21 [ECF No. 1-1]), gross negligence (*id.* ¶¶ 23-24), the New Mexico Unfair Insurance Practices Act and the New Mexico Unfair Trade Practices Act (*id.* ¶¶ 33-35), and punitive damages (*id.*).

### 1. 29 U.S.C. § 1144 Completely Preempts the State Law Claims.

ERISA "comprehensively regulates" employee benefit plans. *Pilot Life Ins. Co. v. Dedeauz*, 481 U.S. 41, 44 (1987). Complete preemption applies to "any state law 'insofar as [it] may now or hereafter relate to any employee benefit plan,' *unless* the law 'regulates insurance, banking, or securities.'" *Hancock v. Metropolitan Life Ins. Co.*, 590 F.3d 1141, 1148 (10th Cir. 2009) (quoting 29 U.S.C. §§ 1144(a) & 1144(b)(2)(A)) (emphasis added).

The Tenth Circuit has consistently found that ERISA preempts state law claims relating to allegedly unreasonable denials of insurance claims. *See, e.g.*, *Allison v. Unum Life Ins. Co. of N. Am.*, 381 F.3d 1015, 1026-27 (10th Cir. 2004); *Kidneigh v. Unum Life Ins. Co. of N. Am.*, 345 F.3d 1182, 1186-89 (10th Cir. 2003); *Moffett v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227, 1236-37 (10th Cir. 2002). All of the state law claims of the Boxes and the Estate against MetLife, GE, and the GE Plans fall within the scope of ERISA complete preemption, and, therefore, the Court should dismiss those state law claims.

### 2. ERISA Conflict Preemption Bars the State Law Claims.

One object of ERISA was "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) (citation and internal quotation marks omitted). Congress, intending to encourage the proliferation of employee benefit plans, was concerned that "[a] patchwork scheme [of varying state law

requirements] . . . might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987) (citation to legislative history omitted).

To accomplish its objectives, Congress created a "carefully integrated" civil enforcement mechanism, found at 29 U.S.C. § 1132. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). ERISA's remedial framework is "one of the essential tools for accomplishing the stated purposes of ERISA." *Pilot Life Ins. Co.*, 481 U.S. at 52. Indeed, the Supreme Court has emphasized that the "purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). In crafting this "interlocking, interrelated, and interdependent remedial scheme," *Russell*, 473 U.S. at 146, Congress carefully balanced "the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life*, 481 U.S. at 54.

According to the Supreme Court, "[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that *ERISA's civil enforcement remedies were intended to be exclusive*." *Id.* (emphasis added); *see also* H.R. Rep. No. 98-807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 4639, 4670, 4678 (to achieve its purposes, Congress intended that all actions to enforce rights under benefit plans be treated as "federal questions"). Thus, the Supreme Court concluded that "Congress clearly expressed an intent that the civil enforcement provisions of

ERISA § 502(a) be the *exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits . . . .*" *Pilot Life*, 481 U.S. at 52 (emphasis added).

Given the legislative purposes expressed in ERISA and the civil remedies provided by Congress to accomplish them, "state laws providing alternative enforcement mechanisms" are preempted because they conflict with ERISA. *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995). The Supreme Court first recognized conflict preemption under ERISA in *Russell*, when it rejected a claim for punitive damages under ERISA's breach of fiduciary duty provision, 29 U.S.C. § 1109(a), and declined to imply a private cause of action to recover punitive damages. Emphasizing that "'[t]he presumption that a remedy was deliberately omitted is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement,'" the Court could not reconcile plaintiff's effort to recover punitive damages with the statute's exclusive enforcement and remedial scheme. *Russell*, 473 U.S. at 147 (citation omitted).

The Supreme Court has repeatedly recognized that ERISA's civil enforcement scheme has "extraordinary preemptive power." *Davila*, 542 U.S. at 209. In *Pilot Life*, the Supreme Court unequivocally held that conflict preemption principles precluded the plaintiff's Mississippi bad faith claim:

> The policy choices reflected in the inclusion of certain
> remedies and the exclusion of others would be completely
> undermined if ERISA-plan participants and beneficiaries

>were free to obtain remedies under state law that Congress rejected in ERISA.

*Pilot Life*, 481 at 54. As a result, the Supreme Court held that Congress had "clearly express[ed], through the structure and legislative history of [Section 502(a) of ERISA] an intention that the federal remedy provided by that provision displace state causes of action." *Id.* at 57. In *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), the Supreme Court again relied on conflict preemption to hold that ERISA preempted a Texas wrongful discharge claim (based on an allegation that the discharge was intended to deprive plaintiff of pension benefits), because the state claim permitted tort damages that conflicted with ERISA's exclusive remedial scheme. 498 U.S. at 142.

Whether conflict preemption applies to the state law claims asserted against MetLife, GE, and the GE Plans depends simply on whether those claims give the Boxes and the Estate a remedy that is not available under ERISA or otherwise conflicts with the "purposes and objectives of Congress" in enacting ERISA. *Pilot Life*, 481 U.S. at 52. The Tenth Circuit has held that state law bad faith claims conflict with ERISA's remedial scheme, and fall within the scope of ERISA conflict preemption. *See, e.g.*, *Allison*, 381 F.3d at 1025-26; *Kidneigh*, 345 F.3d at 1185; *Moffett,* 291 F.3d at 1237. Similarly, the Tenth Circuit has ruled that ERISA conflict preemption bars state law punitive damages claims and state statutes awarding penalties, such as legal fees. *Allison*, 381 F.3d at 1026; *Conover v. Aetna U.S. Health Care, Inc.*, 320 F.3d 1076, 1080 (10th Cir. 2003); *Moffett,* 291 F.3d at 1237 n. 6. The state law claims of the Boxes and the Estate against MetLife, GE, and the GE Plans conflict with ERISA's

comprehensive remedial scheme, and, therefore, conflict preemption applies to those claims.

**IV.   CONCLUSION.**

For the previously discussed reasons, ERISA preempts the state law claims of the Boxes and the Estate against MetLife, GE, and the GE Plans, and, therefore, the Court should dismiss with prejudice the state claims against MetLife, GE, and the GE Plans based on breach of contract, bad faith, gross negligence, the New Mexico Unfair Insurance Practices Act, the New Mexico Unfair Trade Practices Act, and punitive damages and allow MetLife, GE, and the GE Plans twenty-one days after the date of the Court's order granting the motion to dismiss to file their answer to the ERISA claim.

DATED this 21st day of June, 2011.

                                                   Respectfully submitted,

                                                   HOLLAND & HART LLP

*/s/ Kristina Martinez*
Kristina Martinez
Post Office Box 2208
Santa Fe, New Mexico  87504-2208
Phone (505) 988-4421
Fax (505) 983-6043
kemartinez@hollandhart.com

- and -

        Jack M. Englert, Jr.
        6380 S. Fiddler's Green Circle, Suite 500
        Greenwood Village, CO 80111
        Phone (303) 290-1087
        Fax (303) 290-1606
        jenglert@hollandhart.com

        **ATTORNEYS FOR DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY, GENERAL ELECTRIC COMPANY, GENERAL ELECTRIC PENSION TRUST, AND GENERAL ELECTRIC SAVINGS AND SECURITY PROGRAM**

## **CERTIFICATE OF SERVICE**

I certify that on June 21, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter Everett IV, Esq.
peiv@everettlaw-nm.com
**Attorney for Plaintiff**

John M. Brant a/k/a Jack Brant
*jack@jackbrantlaw.com*
**Attorney for Defendants Michael A. Peters and Peters & Associates, PC**

And I served a copy of the foregoing document to the following via U. S. Mail postage prepaid to:

P. Scott Eaton
Eaton Law Office, P.C.
Post Office Box 25305
Albuquerque, NM 87125
(505) 243-1486
(505) 842-0485-fax

**Attorney for Defendant AAA Life Insurance**

Catherine Torres
New Mexico Department of Health
190 S. St. Francis Drive
Santa Fe, NM 87501
(505) 827-2613

**Defendant New Mexico Department of Health**

Paul B. Roth
School of Medicine
University of New Mexico
Albuquerque, NM 87131
(505) 277-0111

David J. Schmidly
Office of the President
MSC05 3300
Scholes Hall Suite 144
1 University of New Mexico
Albuquerque, NM 87131
(505) 277-2626

**Defendant University of New Mexico**

Ross E. Zumault, M.D.
New Mexico Office of the Medical Investigator
1101 Camino de Salud, NE
Albuquerque, NM 87102
(505) 827-3700

**Defendant Office of Medical Investigator**


                                        */s/ Kristina Martinez*

5136116_1.DOC