# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF KATHERINE J.
GONZALES, SCOTT BOX, individually and
as Personal Representative, and RUSSELL
BOX, children of Katherine J. Gonzales,

        Plaintiffs,

vs.                                             No. CIV 11-0486 JB/WDS

AAA LIFE INSURANCE COMPANY,
a subsidiary of AAA AUTO CLUB,
GENERAL ELECTRIC COMPANY,
GENERAL ELECTRIC PENSION
TRUST, METROPOLITAN LIFE
INSURANCE (Plan Administrator; ERISA),
NEW MEXICO DEPARTMENT OF
HEALTH, UNIVERSITY OF NEW MEXICO,
OFFICE OF MEDICAL INVESTIGATOR, and
MICHAEL A. PETERS, attorney, individually and
PETERS & ASSOCIATES, PA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Motion to Dismiss the Plaintiffs' State

Law Claims of MetLife, GE, and the GE Plans, filed June 27, 2011 (Doc. 8)("Motion to Dismiss");

and (ii) the Plaintiffs' Motion to Strike Exhibit "B," filed March 22, 2012 (Doc. 65)("Motion to

Strike"). The Court held hearings on January 24, 2012 and March 22, 2012. The primary issues are:

(i) whether the Court should dismiss the Plaintiffs' state law claims against Defendants General

Electric Company, General Electric Savings and Security,[1] General Electric Pension Trust,[2] and

---

[1]In the Defendants' Notice of Removal, they refer to Defendants General Electric Pension
Trust and GE Savings and Security Program collectively as GE Plans. See Notice of Removal, filed
June 7, 2011 (Doc. 1). The Defendants relate that the Plaintiffs incorrectly refer to GE Savings and
Security Program as General Electric Savings & Security. Notably, GE Savings and Security
Program does not appear as a party in the caption of the Plaintiffs' Complaint for Negligence, Gross

Metropolitan Life Insurance ("MetLife") as preempted under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-453 ("ERISA"); (ii) whether the Court should give the GE Defendants and MetLife twenty-one days to file their answers as opposed to fourteen days to file their answers following the Court's decision on the Motion to Dismiss; and (iii) whether the Court should strike an exhibit which the GE Defendants and MetLife attached to their reply brief.  The Court will grant the Motion to Dismiss.  Because the Plaintiffs have conceded that ERISA preempts their state law claims against the GE Defendants, the Court will dismiss the Plaintiffs' state law claims against the GE Defendants.  Thus, only the ERISA claim the Plaintiffs have asserted in Count VI remains against the GE Defendants.  The Court concludes that the Plaintiffs have not stated a plausible cause of action against MetLife under the Unfair Insurance Practices Act, N.M.S.A.1978, §§ 59A-16-1 to 59A-16-30, because MetLife does not have fair notice of what claim under this statute the Plaintiffs seek to pursue against it.  Additionally, the allegations in the Plaintiffs' pleadings lead to the conclusion that ERISA preempts the remaining state law claims against MetLife.  Thus, only the ERISA claim the Plaintiffs have asserted in Count VI remains against MetLife.  Because the Plaintiffs do not appear to oppose the request, and because the Court believes the request is otherwise appropriate, the Court will grant the GE Defendants' and Metlife's request in their Motion to Dismiss that the Court provide them with twenty-one days to file their answers from the date of entry of this opinion.  Because the Court does not find it necessary, for the purposes

---

Negligence, Breach of Contract, Bad Faith Insurance Practice, Mandamus, and Punitive Damages, filed May 5, 2011 (Doc. 1-1)("Complaint").  Nevertheless, there are various allegations against this entity in the Complaint, and it has entered an appearance in this proceeding.  Under these circumstances, the Court will treat GE Savings and Security Program as a party to this action.

[2]When the Court refers collectively to General Electric Company, General Electric Savings and Security, and General Electric Pension Trust, it will refer to them as the "GE Defendants."

of resolving the Motion to Dismiss, to consider the exhibit which the Plaintiffs seek to strike, the Court will deny the Motion to Strike as moot.

## FACTUAL BACKGROUND

The Court recites the factual background in this case in the light most favorable to the Plaintiffs.  "Plaintiff Scott Box is the Personal Representative of his deceased mother, Katherine J. Gonzales, representing the Estate and the interests of his brother, Russell Box."  Complaint for Negligence, Gross Negligence, Breach of Contract, Bad Faith Insurance Practice, Mandamus, and Punitive Damages ¶ 2, at 2, filed May 5, 2011 (Doc. 1-1)("Complaint").  K. Gonzales "was murdered by her husband Wayne Gonzales on March 2, 2009."  Complaint ¶ 2, at 2-3.  Before K. Gonzales "died, her husband Wayne died instantly by shooting himself in the head."  Complaint ¶ 2, at 3.  "Wayne died before Katherine who was taken by ambulance to the hospital."  Complaint ¶ 2, at 3.  K. Gonzales "did survive Wayne for all legal purposes, including insurance and survivor benefits."  Complaint ¶ 5, at 3.  "Based on the facts and circumstances, all Defendants knew or should have known that Wayne predeceased" K. Gonzales.  Complaint ¶ 6, at 3.

Defendant Michael A. Peters acted as an "attorney, on behalf of his client the Estate of Katherine J. Gonzales and brother of Katherine."  Complaint ¶ 7, at 3-4.  Peters, along with "Neal F. Mitchell, Personal Representative of Katherine's Estate, as lawyer for the heirs and the beneficiaries of her Estate, intentionally or grossly negligently filed documents under oath with the Bernalillo County State District Court, in Cause No. PB-2009-00162."  Complaint ¶ 7, at 3-4.  These documents stated "that the decedent, Katherine J. Gonzales, had no children, intentionally or grossly negligently omitting to inform the" probate court "that Katherine had two children that survived her."  Complaint ¶ 7, at 4.  Peters told the probate court that "he thought the children had been adopted."  Complaint ¶ 7, at 4.  K. Gonzales and W. Gonzales "died intestate."  Complaint ¶ 8, at

4. "There were no children from the marriage of Katherine and Wayne." Complaint ¶ 9, at 4. The Boxes "were sons of Katherine J. Gonzales from a former marriage." Complaint ¶ 9, at 4.

"Defendant Metropolitan Life Insurance (Met Life) is the (ERISA) Plan administrator for the GE life insurance policy" at issue and "the seller of the insurance property." Complaint ¶ 1, at 2. MetLife "negligently and grossly negligently failed to pay life insurance benefits to the legal beneficiary, negligently relying upon hearsay information to pay death benefits (pension and securities/financial benefits) to the wrong beneficiary." Complaint ¶ 1, at 2. Defendant AAA Life Insurance Company "in bad faith and in gross breach of contract paid life insurance proceeds to the contingent beneficiary, Carl Gonzales." Complaint ¶ 18, at 8. "Katherine J. Gonzales was the primary beneficiary on the policy insuring Wayne's life." Complaint ¶ 18, at 8-9. "As Katherine had survived Wayne, she was entitled to the benefits and proceeds" of his life insurance along with all of his "assets, securities, pension benefits." Complaint ¶¶ 18-19, at 9. The GE Defendants "in bad faith and in gross breach of contract, negligence and or intentional violation of ERISA and all emoluments, grossly negligently employed Met Life to administer the life insurance policy benefits and paid life insurance proceeds and other pension and security/financial assets to the wrong person." Complaint ¶ 19, at 9. "Even if Katherine J. Gonzales had predeceased" W. Gonzales, "he could not receive her death insurance benefits because he criminally killed her." Complaint ¶ 19, at 9. "GE Pension Trust in bad faith and in gross breach of contract paid Wayne's pension account funds to the contingent beneficiary, Carl Gonzales." Complaint ¶ 20, at 9. "GE Savings & Security has refused to provide information regarding GE Savings & Security financial assets belonging to Katherine J. Gonzales, individually and as heir of Wayne Gonzales in bad faith and in breach of contract." Complaint ¶ 21, at 9-10. K. Gonzales "is the third party beneficiary of pension accounts and financial assets which would have been paid to Wayne, his stocks and securities account funds,"

which "were apparently paid to the contingent beneficiary."  Complaint ¶ 21, at 10.  K. Gonzales "was the primary beneficiary on Wayne's GE stocks and securities account."  Complaint ¶ 21, at 10.  "As Katherine had survived Wayne, she was entitled to the benefits and proceeds" from W. Gonzales' General Electric stocks and securities account.  Complaint ¶ 21, at 10.

"AAA, GE, GE Pension Trust, and GE Savings & Security negligently failed to reasonably or prudently investigate whether Wayne predeceased Katherine although all knew or should have known Katherine J. Gonzales was murdered by her husband Wayne Gonzales . . . ."  Complaint ¶ 23, at 10.  "AAA, GE, Met Life, GE Pension Trust, and GE Savings & Security grossly negligently relied on erroneous death certificate facts provided with intent to mislead."  Complaint ¶ 24, at 11.  "The intrinsic content of those certificates, hearsay as a matter of law, contained sufficient conflicting 'red flag' information which Defendants, acting reasonably and prudently, should have known (or knew) the homicide suicide causes of death statements upon the two death certificates unequivocally demanded further inquiry."  Complaint ¶ 24, at 11.  "Defendants imprudently and unreasonably grossly negligently accepted the hearsay information thereupon rather than doing minimal investigation into the actual facts and true times of death of the murder/suicide."  Complaint ¶ 24, at 11.  "These entities knew or should have known that the death certificates contained incorrect erroneous information as to the time of death of each deceased individual."  Complaint ¶ 24, at 11.  The "Albuquerque Police Department reports," the "Albuquerque Fire Department paramedics report, and ambulance attendants' report, all certify Wayne Gonzales died before Katherine J. Gonzales."  Complaint ¶ 24, at 11-12.  The "recorded statement of Carl Gonzales who was present at the scene saw his brother Wayne dead in a chair from a self-inflicted gunshot to his head by his own hand, and who saw Katherine J. Gonzales taken to the hospital," also states that W. Gonzales died before K. Gonzales.  Complaint ¶ 24, at 11-12.

The Plaintiffs allege:

> It is also common knowledge that death certificates in New Mexico state the time of death on a certificate when a physician from the Office of the Medical Investigator inspects the body, determines death and takes possession of the body and declares the person deceased, not the time the person dies (unless, as was the case of Katherine J. Gonzales, a private physician at the hospital, declared her time of death, which was after Wayne had earlier died by suicide).

Complaint ¶ 24, at 12. "The 'coroner,' the State Medical Investigator, puts the time of death at the time he finally is able to get to the scene and view the body (in this case hours after death), and take possession of the body, probably after the body had been taken to the funeral home." Complaint ¶ 24, at 12. "Both GE and Met Life are liable for their negligence as plan administrators and fiduciaries as well as all others whose negligence caused the damages to the Plaintiffs as defined by ERISA's civil claim provisions for ERISA violations and equitable remedies." Complaint ¶ 37, at 17. The Plaintiffs also allege:

> Even if it is accepted, arguendo, a properly authenticated death certificate might be prima facie evidence of elements surrounding a death, the murder/homicide of Katherine J. Gonzales by her husband Wayne Gonzales should have put any reasonable prudent person on notice that insurance death proceeds should be analyzed carefully before paying the Estate, Personal Representative brother of the killer, Wayne Gonzales.

Complaint ¶ 37, at 17.

## PROCEDURAL BACKGROUND

On May 5, 2011, the Plaintiffs filed their Complaint in Second Judicial District, County of Bernalillo, New Mexico. See Doc. 1-1. The following Counts in the Complaint implicate the GE Defendants and/or MetLife: (i) Count II -- Bad Faith and Breach of Contract; (ii) Count III -- Gross Negligence; (iii) Count V -- Unfair Insurance Practices Act Violations, Unfair Trade Practices Act Violations, Damages, Punitive Damages; and (iv) Count VI -- Violation of ERISA. See Complaint at 8-12, 15-19. On June 7, 2011, the Defendants filed their Notice of Removal. See Doc. 1.

On June 21, 2011, the GE Defendants and MetLife filed their Motion to Dismiss. <u>See</u> Doc. 8. In the Motion to Dismiss, the GE Defendants and MetLife seek dismissal of the "state law claims" that the Plaintiffs have asserted against them. Motion to Dismiss at 1. The GE Defendants and MetLife argue that two federal preemption doctrines "limit the assertion of state law claims relating to ERISA-governed benefits" and that "both of these preemption doctrines bar the state law claims" that the Plaintiffs have asserted. Motion to Dismiss at 2. The GE Defendants and MetLife contend that complete preemption under 29 U.S.C. § 1144 "bars the application of any state law that relates to an employee benefit plan," and that "[t]he state law claims" the Plaintiffs have asserted "directly relate to benefits under the ERISA-governed GE Plans, and fall within the scope of complete preemption." Motion to Dismiss at 2. GE and Metlife also assert that conflict preemption bars the Plaintiffs' state law claims against them, because their state law claims conflict "with ERISA's exclusive remedial scheme" under 29 U.S.C. § 1132(a). Motion to Dismiss at 2-3. The GE Defendants and MetLife argue that the Plaintiffs' state law claims are inadequate under the pleading standards required by <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). <u>See</u> Motion to Dismiss at 4-6. The GE Defendants and MetLife assert that the claims are conclusory and are not plausible. <u>See</u> Motion to Dismiss at 4-5.

Regarding their preemption argument, the GE Defendants and MetLife contend that the Plaintiffs "have acknowledged that ERISA governs the GE Plans" and assert that the Plaintiffs "have asserted a claim for relief under ERISA." Motion to Dismiss at 6. Thus, they contend that "there can be no dispute that ERISA governs the" Plaintiffs' claims "against MetLife, GE, and the GE Plans." Motion to Dismiss at 6. The GE Defendants and MetLife contend that the United States Court of Appeals for the Tenth Circuit "has consistently found that ERISA preempts state law claims relating to allegedly unreasonable denials of insurance claims," and thus the Plaintiffs' state

law claims "fall within the scope of ERISA complete preemption."  Motion to Dismiss at 7.  The GE Defendants and MetLife contend that conflict preemption preempts the Plaintiffs' state law claims, because "Congress clearly expressed an intent that the civil enforcement provision of ERISA § 502(a) be the <u>exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits</u>."  Motion to Dismiss at 7-8 (emphasis in original)(quoting <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 52 (1987)).  The GE Defendants and MetLife note that the Plaintiffs' effort to obtain punitive damages is inconsistent with ERISA's enforcement and remedial scheme.  <u>See</u> Motion to Dismiss at 9.  The GE Defendants and MetLife also request that the Court permit them to have "twenty-one days after the date of the Court's order granting the motion to dismiss to file their answer to the ERISA claim."  Motion to Dismiss at 11.

At the hearing on January 24, 2012, the Court noted that the Plaintiffs might not oppose dismissal of the state law claims against the GE Defendants and MetLife based on the fact that the Plaintiffs have not filed a response to the Motion to Dismiss.  <u>See</u> Transcript of Hearing at 9:21-24 (taken January 24, 2012)(Court)("Jan. 24, 2012 Tr.").[3]  The Plaintiffs clarified that they felt their response to one of the subsequent motions to remand covered most of the issues that the Motion to Dismiss raised.  <u>See</u> Jan. 24, 2012 Tr. at 13:16-22 (Court).  They noted that, if the Court were to remand the case to state court, the Motion to Dismiss would be moot.  <u>See</u> Jan. 24, 2012 Tr. at 13:20-22 (Court).  Following a discussion whether the parties intended to pursue their motions seeking remand of the case to state court, the Court stated that it would provide the parties with ten days to determine whether they intended to pursue the motions to remand.  <u>See</u> Jan. 24, 2012 Tr. at 34:12-35:8 (Court, Everett).  The Court also stated that it would permit the Plaintiffs an opportunity

---

[3]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

to file a written response to the Motion to Dismiss.  See Jan. 24, 2012 Tr. at 34:12-35:8 (Court, Everett).  The Court asked the Plaintiffs how long they would need, in addition to the ten days that the Court planned to provide the parties to allow them to determine whether to withdraw their motions seeking remand of the case to state court, to file a written response to the Motion to Dismiss.  See Jan. 24, 2012 Tr. at 43:2-6 (Court).  The Plaintiffs represented that they would need another five to ten days, and the Court then granted them ten additional days to file a written response.  See Jan. 24, 2012 Tr. at 43:10-15 (Everett, Court).  Since January 24, 2012, the parties have withdrawn their motions to remand and motion seeking to certify questions to the Supreme Court of New Mexico.  See Notice of Withdrawal of Defendant Department of Health's Motion to Remand at 1, filed February 6, 2012 (Doc. 55); Letter from Courtenay L. Keller to the Court at 1 (dated February 6, 2012), filed February 6, 2012 (Doc. 56); Letter from Peter Everett IV to the Court at 1 (dated February 7, 2012), filed February 7, 2012 (Doc. 57).

On February 21, 2012, the Plaintiffs filed their Response and Brief to GE/MetLife's Motion to Dismiss.  See Doc. 59 ("Response").  The Plaintiffs argue that "MetLife has no authority under the GE Life Insurance Trust Plan as described in the GE Employee Benefits Handbook," which the Plaintiffs note they have attached to their Objection to the Removal, filed June 27, 2011 (Doc. 11).  Response at 2-3.  The Plaintiffs assert that MetLife has made a "self-serving claim to be a plan fiduciary."  Response at 3.  The Plaintiffs contend that they "deny (or retract) any earlier claim in its complaint that MetLife was an administrator or in any way authorized by the GE Life Insurance Trust plan as claimed by Defendants GE and MetLife in their Motion to Dismiss."  Response at 3-4. The Plaintiffs argue that "MetLife cannot claim it is a duly appointed fiduciary as no document purports to support that claim."  Response at 4.  The Plaintiffs concede, however, that ERISA preempts the state law claims they have asserted against the GE Defendants.  See Response at 3

("State Court claims against GE are, on the other hand, tenuous and Plaintiffs acquiesce to the claim by GE that the state law claims are preempted.").  The Plaintiffs argue that "[g]eneral common knowledge informs one that MetLife is in the insurance business and is regulated by New Mexico Insurance law (unrelated to ERISA, in this case) and probate law regarding intestate succession." Response at 4.  The Plaintiffs contend that, "[b]y acting outside of the GE Life Insurance Trust Plan" and "the relevant Plan documents provided to Plaintiffs, MetLife is exposed to New Mexico State tort claims in Plaintiffs' complaint, as the conduct of MetLife paying the wrong death benefit beneficiary, did not relate to the GE Plan."  Response at 4-5.  The Plaintiffs assert that "Metlife cannot avoid the New Mexico State law claims (and seek umbrella ERISA preemption protection) merely by claiming it acted as a fiduciary to the GE Life Insurance Trust, without any referenced authority to act as a fiduciary and contrary to the plan documents it sent to Plaintiffs."  Response at 5. The Plaintiffs argue that "MetLife does not base" the actions it took "on any GE Plan Authority." Response at 15.  The Plaintiffs contend that "MetLife does not claim it acted under the plan nor does MetLife make the required reference to the plan to justify its non-payment act."  Response at 16. The Plaintiffs assert that "the Court may take judicial notice that paying the wrong life insurance death benefit named beneficiary is by common knowledge imprudent."  Response at 19.

On March 6, 2012, the GE Defendants and MetLife filed their reply brief.  See Reply of Metlife, GE, and the GE Plans in Support of Their Motion to Dismiss the Plaintiffs' State Law Claims (Doc. 61)("Reply").  The GE Defendants and MetLife assert that the Plaintiffs' argument "that MetLife was not authorized to determine to whom the life insurance benefits under the GE Plans were payable" is "unsupported."  Reply at 2.  The GE Defendants and MetLife note that, at the time of filing the Motion to Dismiss, based on the allegations in the Plaintiffs' pleadings, "they were unaware of any issue relating to MetLife's status as the ERISA claim fiduciary that made the

determination relating to the life insurance benefits at issue under the GE Plans." Reply at 3-4. The GE Defendants and MetLife contend that the nature of the Plaintiffs' "claim against MetLife unquestionably is a 29 U.S.C. § 1132(a)(1)(B) claim 'to recover benefits due [to participants] under the terms of [the] [P]lan,'" based on the nature of their allegations that "MetLife is the entity that both made the claim determination and paid the life insurance benefits at issue." Reply at 5 (quoting 29 U.S.C. § 1132(a)(1)(B)). Furthermore, the GE Defendants and MetLife contend that the Plaintiffs' denial "that MetLife is an administrator or a fiduciary under the GE Plans . . . makes no sense in light of [the Plaintiffs'] contentions that MetLife both made the claim determination regarding the life insurance benefits and paid the benefits in accordance with that determination." Reply at 6. The GE Defendants and MetLife argue that "distinguishing between preempted and non-preempted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the preemptive scope of ERISA." Reply at 6 (quoting Aetna Health, Inc. v. Davila, 542 U.S. 200, 214 (2004))(internal quotation marks omitted). The GE Defendants and MetLife also assert that the "GE Plans Benefits Handbook" also supports the conclusion that MetLife is responsible for the life insurance benefits at issue. See Reply at 8-9 (citing Your GE Benefits Handbook, filed March 6, 2012 (Doc. 61-2)("GE Plans Benefits Handbook")).

On March 22, 2012, the Plaintiffs filed their Motion to Strike. See Doc. 65. They seek to strike the GE Plans Benefits Handbook attached to the Reply. See Motion to Strike at 1-2. They assert that one of the pages in the GE Plans Benefits Handbook "was not produced to Plaintiffs with the handbook excerpts provided by MetLife with its letter of March 16, 2011, which MetLife communicated to be the plan's justification under ERISA for its having paid the wrong beneficiary." Motion to Strike at 2. The GE Defendants and MetLife have not filed a written response to the Motion to Strike.

At the March 22, 2012 hearing, the GE Defendants and MetLife asserted that ERISA preempts the Plaintiffs' state law claims against MetLife, even if the Plaintiffs retract their allegation that MetLife was an administrator of the ERISA plan, because of the nature of the allegations against MetLife.  See Transcript of Hearing at 3:12-4:7 (taken March 22, 2012)(Englert)("Mar. 22, 2012 Tr.").  The GE Defendants and MetLife noted that the Plaintiffs' allegations in the Complaint are judicial admissions.  See Mar. 22, 2012 Tr. at 3:12-4:7 (Englert).  The GE Defendants and MetLife asserted that, even when considering the other allegations in the Complaint other than the ones the Plaintiffs have attempted to retract, MetLife is still a fiduciary under ERISA.  See Mar. 22, 2012 Tr. at 4:8-14 (Englert).  Regarding the Motion to Strike, the GE Defendants and MetLife noted that they did not attach the entire GE Plans Benefits Handbook to their Reply, because the document is a voluminous one.  See Mar. 22, 2012 Tr. at 4:15-5:6 (Englert).  They noted that, for ERISA purposes, it is irrelevant whether they provided the entire handbook to the Plaintiffs.  See Mar. 22, 2012 Tr. at 4:25-5:10 (Englert).  The Court inquired whether the GE Defendants and MetLife needed the opportunity to file a written response to the Motion to Strike, and the Plaintiffs asserted that they did not need an opportunity to do so based on their arguments at the hearing.  See Mar. 22, 2012 Tr. at 5:22-25 (Court, Englert).  The Plaintiffs acknowledged that, based on their concessions, the Court could dismiss the state law claims against the GE Defendants.  See Mar. 22, 2012 Tr. at 7:4-6 (Court, Everett).  The Plaintiffs noted that they do not have enough information at this time to determine whether the excerpt from the GE Plans Benefits Handbook is authentic and that the plan may have changed at some point in time.  See Mar. 22, 2012 Tr. at 7:19-8:7 (Everett).  The Court asked the Plaintiffs whether it made sense for the Court to rule on the Motion to Dismiss based on the current allegations in the Complaint, and the Plaintiffs acknowledged that this course of action was proper.  See Mar. 22, 2012 Tr. at 13:6-9 (Court, Everett).  The Plaintiffs then asserted that they

would move to amend if the Court granted the Motion to Dismiss. <u>See</u> Mar. 22, 2012 Tr. at 13:11-15 (Court, Everett). The GE Defendants and MetLife noted that, because of the delays in resolving the motions to remand in the case, they have not yet had an opportunity to provide the entire GE Plans Benefits Handbook to the Plaintiffs. <u>See</u> Mar. 22, 2012 Tr. at 14:17-15:4 (Englert). The GE Defendants and MetLife noted that they planned to produce the GE Plans Benefits Handbook to the Plaintiffs promptly, and no later than by Monday, March 26, 2012, for arrival at the office of Plaintiffs' counsel by Tuesday, March 27, 2012. <u>See</u> Mar. 22, 2012 Tr. at 16:7-18:5 (Englert, Court, Everett). The Court then asked the Plaintiffs to send a letter to the Court by the close of business on March 27, 2012 to inform the Court whether it conceded the genuineness and authenticity of the handbook. <u>See</u> Mar. 22, 2012 Tr. at 17:6-17 (Court).

On March 28, 2012, the Plaintiffs' counsel, Peter Everett IV, filed a letter with the Court. <u>See</u> Letter from Peter Everett IV to the Court (dated March 28, 2012), filed March 28, 2012 (Doc. 68)("Letter"). Mr. Everett asserts that he has not been able to resolve the dispute regarding MetLife's role in the plan at issue. Letter at 1-2.

## **STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)**

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>Moore v. Guthrie</u>, 438

F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 546. See Ashcroft v. Iqbal, 129 S.Ct. at 1949 (stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 545 (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. at 1940. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted).

## LAW REGARDING THE UNFAIR INSURANCE PRACTICES ACT

The New Mexico Legislature passed the Unfair Insurance Practices Act "to regulate trade practices in the insurance business and related businesses," including "practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices." N.M.S.A. 1978, § 59A-16-2. N.M.S.A. 1978, § 59A-16-4 proscribes certain forms of misrepresentations that relate to insurance transactions, including "misrepresent[ing] the benefits, advantages, conditions or terms of any policy." N.M.S.A. 1978, § 59A-16-4. N.M.S.A. 1978, § 59A-16-5 forbids "untrue, deceptive or misleading" advertisements that relate to insurance. N.M.S.A. 1978, § 59A-16-5. N.M.S.A. 1978, § 59A-16-8 makes actionable certain falsifications of insurance records and the circulation of "any false statement of the financial condition of an insurer." Various provisions in the Unfair Insurance Practices Act proscribe discrimination in relation to insurance transactions. See, e.g., N.M.S.A. 1978, §§ 59A-16-11 to -13.2. N.M.S.A. 1978, § 59A-16-19 prohibits anti-competitive insurance practices "resulting or tending to result in unreasonable restraint of, or monopoly in, the business of insurance." N.M.S.A. 1978, § 59A-16-19.

N.M.S.A. 1978, § 59A-16-20 imposes liability for a laundry list of unfair claims practices, including the following:

A.    misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B.    failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

C.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

D.    failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed

and submitted by the insured;

E.    not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F.    failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G.    compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

H.    attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

I.    attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

J.    failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

K.    making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

L.    delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

M.    failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

N.    failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

      O.       violating a provision of the Domestic Abuse Insurance Protection Act.

N.M.S.A. 1978, § 59A-16-20.  N.M.S.A. 1978, § 59A-16-30 provides a private right of action for

violations of the Unfair Insurance Practices Act.  N.M.S.A. 1978, § 59A-16-30.  The Unfair

Insurance Practices Act allows for attorneys' fees to prevailing parties.  N.M.S.A. 1978, § 59A-16-

30.

## LAW REGARDING FIDUCIARIES UNDER ERISA

ERISA provides the following general definition for fiduciaries under the statute:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such plan
> or exercises any authority or control respecting management or disposition of its
> assets, (ii) he renders investment advice for a fee or other compensation, direct or
> indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.  Such term includes
> any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (§ 3(21)(A) of ERISA).  The Tenth Circuit has explained that, "under

ERISA, an individual 'may acquire fiduciary status' either by (a) being expressly appointed by the

plan as a fiduciary, or (b) by 'exercis[ing] the fiduciary functions set forth in ERISA § 3(21)(A), 29

U.S.C. § 1002(21)(A).'" Holdeman v. Devine, 474 F.3d 770, 777 (10th Cir. 2007)(quoting In re

Luna, 406 F.3d 1192, 1201 (10th Cir. 2005)).  "Once deemed a fiduciary, either by express

designation in the plan documents or the assumption of fiduciary obligations (the functional or de

facto method), the fiduciary becomes subject to ERISA's statutory duties." In re Luna, 406 F.3d at

1201.  "These [fiduciary] duties, as summarized by the Supreme Court, 'relate to the proper

management, administration, and investment of fund assets, the maintenance of proper records, the

disclosure of specified information, and the avoidance of conflicts of interest.'" In re Luna, 406

F.3d at 1201 (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142-43 (1985)).

The processes for determining whether someone is a fiduciary by express designation in the plan documents or a de facto fiduciary involve different inquiries:

> Assessing whether a person is a named fiduciary under the terms of a plan is, of course, a straightforward inquiry. Deciding whether a person has assumed functional or de facto fiduciary status, however, is a more difficult exercise. To overcome this difficulty, courts frequently interpret the statutory language in ERISA § 3(21)(A) by referencing the common law of trusts.

In re Luna, 406 F.3d at 1202. Courts must also "look to the specific language of ERISA § 3(21)(A)" to assess whether a particular entity or individual qualifies as a fiduciary. In re Luna, 406 F.3d at 1202. As the Tenth Circuit has explained, the status of an employer as a fiduciary or non-fiduciary generally poses the most complex inquiry under ERISA:

> This is not to say that the law of trusts provides all the answers. "Beyond the threshold statement of responsibility . . . , the analogy between ERISA fiduciary and common law trustee becomes problematic. This is so because the trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats." Pegram v. Herdrich, 530 U.S. 211, 225 . . . (2000). Thus, the traditional trustee at common law could not assume a position that would place his interests contrary to the interests of the trust's beneficiaries. Id. Under ERISA, however, an employer can "wear different hats," one as employer and one as fiduciary, even though his interests as employer may not always align with his interests as fiduciary. Id.

In re Luna, 406 F.3d at 1202 n.8 (alteration in original). "ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." Pegram v. Herdrich, 530 U.S. at 225. Thus, as the Supreme Court of the United States has stated:

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

Pegram v. Herdrich, 530 U.S. at 226.

-18-

## LAW REGARDING ERISA PREEMPTION

ERISA provides a uniform regulatory regime over employee-benefit plans and includes expansive preemption provisions which are intended to ensure that employee-benefit-plan regulation would be "exclusively a federal concern."  Aetna Health Inc. v. Davila, 542 U.S. at 208 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)).  See 29 U.S.C. § 1144 (§ 514 of ERISA).  Congress "expressly included a broadly worded pre-emption provision" in ERISA.  Ingersoll-Rand Co. v. McClendon, 498 U.S. at 138.  See Straub v. W. Union Tel. Co., 851 F.2d 1262, 1263 (10th Cir. 1988)("The scope of ERISA preemption . . . is very broad.").  The Tenth Circuit has explained that "[i]mportant to understanding the propriety of removing [a case] is the distinction between 'conflict preemption' under § 514 of ERISA and 'complete preemption' under § 502 of ERISA."  Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1153 (10th Cir. 2004).

1.     **Express Preemption.**

Section 514 of ERISA, 29 U.S.C. § 1144, contains an express preemption provision which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers.  29 U.S.C. § 1144(a).  The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'"  Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 146 (2001).  The Supreme Court has explained: "The key to § 514(a) is found in the words 'relate to.'  Congress used those words in their broad sense, rejecting more limited pre-emption language . . . ."  Ingersoll-Rand Co. v. McClendon, 498 U.S. at 138.  "But at the same time, [the Supreme Court has] recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'"  Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. at 146 (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S.

645, 655 (1995)).

The Supreme Court has held that a state law "relates to" an ERISA plan, and is thus

expressly preempted under § 514, "if it has a connection with or reference to such a plan."  Shaw

v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983).  Additionally, the Supreme Court has

> cautioned against an uncritical literalism that would make pre-emption turn on
> infinite connections.  Instead, to determine whether a state law has the forbidden
> connection, we look both to the objectives of the ERISA statute as a guide to the
> scope of the state law that Congress understood would survive, as well as to the
> nature of the effect of the state law on ERISA plans.

Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. at 147 (citation omitted)(internal quotation marks

omitted).

The ERISA express preemption provision does not apply "if the state law has only a tenuous,

remote, or peripheral connection with covered plans, as is the case with many laws of general

applicability."  District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.1 (1992)

(quotations and citations omitted).  See Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d

1078, 1084 (10th Cir. 1994)(en banc).

**2.      Complete Preemption.**

"The complete-preemption doctrine allows the removal of state actions that fall within the

scope of § 502(a), 29 U.S.C. § 1132, ERISA's civil-enforcement provision."  Ruby v. Sandia Corp.,

699 F.Supp.2d 1247, 1260 (D.N.M. 2010)(Browning, J.).  Section 502(a)(1) provides a cause of

action to any plan beneficiary or participant "to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify rights to future benefits under the

terms of the plan."  29 U.S.C. § 1132(a).  "[T]he preemptive force of § 502(a) of ERISA is so

'extraordinary' that it converts a state claim into a federal claim for purposes of removal and the

well-pleaded complaint rule."  Felix v. Lucent Techs., Inc., 387 F.3d at 1156 (quoting Metro. Life

-20-

Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)).  Even absent the express preemption provision in 29

U.S.C. § 1144 (§ 514 of ERISA), § 502(a) would still preempt state law claims that conflict with the

enforcement mechanism § 502(a) provides.  See Aetna Health Inc. v. Davila, 542 U.S. at 214 n.4.

As the Supreme Court has held:

> Respondents also argue that ERISA § 502(a) completely pre-empts a state
> cause of action only if the cause of action would be pre-empted under ERISA §
> 514(a) . . . .  But a state cause of action that provides an alternative remedy to those
> provided by the ERISA civil enforcement mechanism conflicts with Congress' clear
> intent to make the ERISA mechanism exclusive.

Aetna Health Inc. v. Davila, 542 U.S. at 214 n.4.

In Metropolitan Life Insurance Co. v. Taylor, the Supreme Court found that ERISA

manifested sufficient congressional intent to recharacterize state-law claims that fall within the

scope of § 502(a) of ERISA as federal claims subject to removal.  See 481 U.S. at 65-66.  The

Supreme Court concluded that an ERISA preemption defense provides a sufficient basis for removal

of a cause of action to the federal courts notwithstanding the traditional limitation imposed by the

"well-pleaded complaint" rule.  481 U.S. at 63-66.

"[D]efendants seeking removal under the doctrine of complete preemption bear a significant

burden.  They must establish congressional intent to extinguish similar state claims by making the

federal cause of action exclusive.  And as [courts] must construe removal strictly, reasonable doubts

must be resolved against the complete preemption basis for it."  Lontz v. Tharp, 413 F.3d 435, 441

(4th Cir. 2005).  The Supreme Court in Metropolitan Life Insurance Co. v. Taylor held that the

scope of the "complete preemption" exception for removal is narrow, and limited to state

common-law or statutory claims that fall within § 502(a)(1)(B) of ERISA's civil-enforcement

provision, because "the legislative history consistently sets out this clear intention to make

[§ 502(a)(1)(B)] suits brought by participants or beneficiaries federal questions for the purpose of

federal court jurisdiction." 481 U.S. at 66. The Supreme Court noted, however, that it had previously held that, in light of the various forms of ERISA preemption, "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." Metro. Life Ins. Co. v. Taylor, 481 U.S. at 64.

To come within the removal exception to the well-pleaded complaint rule,[4] a court must, therefore, conclude that the state law claim "should be characterized as a superseding ERISA action 'to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' as provided in § 1132(a)(1)(B)." Wright v. Gen'l Motors Corp., 262 F.3d 610, 614 (6th Cir. 2001). In Wright v. General Motors Corp., the United States Court of Appeals for the Sixth Circuit held that ERISA did not preempt a complaint for unlawful termination as a result of race and sex discrimination, and retaliation. The state complaint included a request for damages for the proceeds of the plaintiff's late-husband's life-insurance policy under his former employer's Health and Disability Benefit Program. The Sixth Circuit concluded that the complaint was not removable, because it "is not a lawsuit claiming wrongful withholding of ERISA covered plan benefits; it is a lawsuit claiming race and sex discrimination and retaliation resulting in damages, one component of which is a sum owed under the provision of the [employee-benefits] plan." Wright v. Gen'l Motors Corp., 262 F.3d at 614 (internal quotation marks omitted).

In Aetna Health Inc. v. Davila, the Supreme Court set forth the test for finding complete preemption:

---

[4]The Tenth Circuit has offered on definition for the well-pleaded complaint rule: "Under the well-pleaded complaint rule, in order to invoke federal-question jurisdiction under 28 U.S.C. § 1331 and thus to be removable on that basis, a federal question must appear on the face of the plaintiff's complaint . . . ." Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1220 (10th Cir. 2011).

> Where the individual is entitled to such [claimed] coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

542 U.S. at 210.  The Supreme Court held that ERISA completely preempted a claim brought under a separate statute, the Texas Health Care Liability Act, for drug benefits under an ERISA plan, because the claim was not independent of the ERISA plan.  See Aetna Health Inc. v. Davila, 542 U.S. at 210.  The Supreme Court emphasized that complete preemption under § 502(a) of ERISA is not limited to situations in which the state cause of action precisely duplicates a cause of action under § 502(a).  See Aetna Health Inc. v. Davila, 542 U.S. at 216 ("Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.").

### 3. Distinguishing Between Express Preemption and Complete Preemption.

The Supreme Court in Metropolitan Life Insurance Co. v. Taylor treated express preemption under § 514 and complete preemption under § 502(a) as two distinct concepts, with only the latter supporting removal.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. at 64 ("ERISA pre-emption [under § 514], without more, does not convert a state claim into an action arising under federal law."); Felix v. Lucent Techs. Inc., 387 F.3d at 1156.  The Supreme Court in Metropolitan Life Insurance Co. v. Taylor explained that "federal pre-emption is ordinarily a federal defense to the plaintiff's suit" and thus is insufficient grounds for removal.  481 U.S. at 63.  Although the Supreme Court in Metropolitan Life Insurance Co. v. Taylor determined that § 514 of ERISA expressly preempted the

-23-

plaintiff's state law claims, the "well-pleaded complaint" rule precluded removal on the basis of a federal defense.  See 481 U.S. at 64.

The Tenth Circuit has explained that "ERISA preemption under § 514 is not sufficient for removal jurisdiction and that a state law claim is only 'completely preempted' under [Metropolitan Life Insurance Co. v.] Taylor if it can be recharacterized as a claim under § 502(a)."  Felix v. Lucent Techs., Inc., 387 F.3d at 1156.  In Felix v. Lucent Technologies, Inc., the Tenth Circuit summarized the distinction between express preemption and complete preemption, quoting from the United States Court of Appeals for the Third Circuit's opinion in Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995):

> The difference between preemption and complete preemption is important.  When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.  It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

Felix v. Lucent Techs., Inc., 387 F.3d at 1158 (quoting Dukes v. U.S. Healthcare, Inc., 57 F.3d at 355).  See Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999)("When a complaint contains only state causes of action that the defendant argues are merely conflict-preempted [under § 514], the court must remand for want of subject matter jurisdiction.").

The Tenth Circuit elaborated on its view of ERISA complete preemption in Schmeling v. NORDAM, 97 F.3d 1336 (10th Cir. 1996), stating:

> We read the term not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal. . . . This usage reveals that "complete preemption" refers to the replacement of a state cause of action with a federal one.

Schmeling v. NORDAM, 97 F.3d at 1342.  In Carland v. Metropolitan Life Insurance Co., 935 F.2d 1114 (10th Cir. 1991), the Tenth Circuit held that "a state law claim will convert to a federal claim only if the claim is preempted by ERISA and within the scope of ERISA's civil enforcement provisions."  935 F.2d at 1118-19.  See Felix v. Lucent Techs., Inc., 387 F.3d at 1157 (quoting Carland v. Metro. Life Ins. Co.).

Other circuits have also stressed that § 502's complete preemption is necessary for removal. See Warner v. Ford Motor Co., 46 F.3d 531, 536 (6th Cir. 1995)(en banc)(overruling its prior precedent for "mistakenly allowing removal in a case not covered by § 1132(a)(1)(B) [§ 502 of ERISA] and only arguably covered by § 1144(a) [§ 514 of ERISA]"); Giles v. NYLCare Health Plans, Inc., 172 F.3d at 337 ("The presence of conflict-preemption [§ 514 of ERISA] does not establish federal question jurisdiction.  Rather than transmogrifying a state cause of action into a federal one -- as occurs with complete preemption -- conflict preemption serves as a defense to state action." (emphasis in original)); King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003) (holding that a state claim must fit within the scope of § 502 and disregarding § 514 express preemption); Rice v. Panchal, 65 F.3d 637, 646 (7th Cir. 1995); Dukes v. U.S. Healthcare, Inc., 57 F.3d at 355 ("That the Supreme Court has recognized a limited exception to the well-pleaded complaint rule for state law claims which fit within the scope of § 502 by no means implies that all claims preempted by ERISA are subject to removal." ); Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 272 (2d Cir. 1994).

The Tenth Circuit noted in Felix v. Lucent Technologies, Inc. that a claim which is remanded to state court risks being preempted in state court under § 514 of ERISA, leaving the plaintiff with no remedy.  "Although this is a valid concern, we have not found it to be a concern of the federal judiciary."  Felix v. Lucent Technologies, Inc., 387 F.3d at 1162.

4.      **ERISA Preemption and Insurance.**

Pilot Life Insurance Co. v. Dedeaux presented the question whether ERISA "pre-empts state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan."  481 U.S. at 43.  The plaintiff's complaint in that case contained only state-law claims for fraud, tortious breach of contract and breach of fiduciary duties arising out of his insurance company's failure to pay disability benefits under the terms of the policy.  See 481 U.S. at 43.  The Supreme Court noted that ERISA's purpose is to

> "protect . . . participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

481 U.S. at 44 (quoting 29 U.S.C. § 1001(b)).  The Supreme Court also noted that, although a "saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance,'" under 29 U.S.C. § 1144(b)(2)(B), "a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company."  481 U.S. at 45 (alterations in original).  Because the plaintiff's common-law causes of action for tortious breach of contract and breach of fiduciary duties were based on alleged improper processing of a claim for benefits under the plaintiff's employee benefit plan, the Supreme Court held that 29 U.S.C. § 1144 preempted the claims.  See 481 U.S. at 57.

Applying Pilot Life Insurance Co. v. Dedeaux, the Tenth Circuit has held that ERISA preempts common-law or state-law statutory claims for breach of contract, bad faith or unfair insurance practices, because they conflict with ERISA's remedial scheme.  See Allison v. UNUM Life Ins. Co. of Am., 381 F.3d 1015, 1026 (10th Cir. 2004)(holding that ERISA preempted the

plaintiff's breach-of-contract claim against her long-term-disability-benefits insurance carrier, because she sought consequential and punitive damages, which conflicted with ERISA's remedial scheme); Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d 1182, 1184-87 (10th Cir. 2003)(holding that state-law claims for bad faith and loss of consortium were preempted); Kelley v. Sears, Roebuck & Co., 882 F.2d 453, 455-56 (10th Cir. 1989)(holding that ERISA preempted state-law claims brought under Colorado's unfair-insurance-practices statute, which is virtually identical to the New Mexico statute).  Accordingly, the United States District Court for the District of New Mexico has held that ERISA preempts claims for employee health-insurance benefits brought under the Unfair Insurance Practices Act.  See Nechero v. Provident Life & Accident Ins. Co., 795 F.Supp. 374, 380-81 (D.N.M. 1992)(Mechem, J.); Wexler v. Brokerage Servs., Inc., No. 88-1487-JB, 1989 WL 379862, at *2-3 (D.N.M. Oct. 18, 1989)(Burciaga, J.)(relying on Kelley v. Sears, Roebuck & Co. to conclude that ERISA preempts claims for misrepresentation and unfair claims practices pursuant to the equivalent sections of the New Mexico unfair-insurance-practices statute).

ERISA contains a savings clause for laws that regulate insurance.  See 29 U.S.C. § 1144(b)(2)(A) (§ 514(b)(2)(A) of ERISA) ("Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.").  The Supreme Court has explained how ERISA § 514(b)(2)(A) operates: "To summarize the pure mechanics of the provisions quoted above: If a state law 'relate[s] to . . . employee benefit plan[s],' it is pre-empted.  The saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance.'"  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 45.  The Supreme Court has recognized that a Court must consider two factors to determine whether a state law is a law that regulates insurance under ERISA § 514(b)(2)(A): (i) "the state law

must be specifically directed toward entities engaged in insurance"; and (ii) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-42 (2003).   The Tenth Circuit has further explained this second requirement in a case dealing with a statute that "define[d] the manner in which insurance claims should be processed":

> A law which defines the manner in which insurance claims should be processed "declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain [consequential and] punitive damages."  Such a law thus does not effect a change in the risk borne by insurers and the insured, because it does not affect the substantive terms of the insurance contract.  On the other hand, a law mandating that a certain disease be covered under health insurance contracts would effect a spread of risk, both from insureds to insurers, and among the insureds themselves.

Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 466 (10th Cir. 1997).

### 5.   Defeating § 502 Complete Preemption with an Independent Legal Duty.

The Supreme Court in Aetna Health Inc. v. Davila explained that, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and . . . there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. at 210.  Section 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   28 U.S.C. § 1132(a)(1)(B) (§ 502(a)(1)(B) of ERISA).   "[A] claim only falls within ERISA's civil enforcement scheme when it is based solely on legal duties created by ERISA or the plan terms, rather than some other independent source." David P. Coldesina D.D.S., P.C., Emp. Profit Sharing Plan and Trust v. Estate of Simper, 407 F.3d 1126,1137 (10th Cir. 2005)(citing Aetna Health Inc. v. Davila, 542 U.S. at 210); Marin Gen. Hosp.

v. Modesto & Empire Traction Co., 581 F.3d 941, 950 (9th Cir. 2009)("Since the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on 'other independent legal dut[ies]' within the meaning of [Aetna Health Inc. v. ]Davila.").  In David P. Coldesina D.D.S., P.C., Employee Profit Sharing Plan and Trust v. Estate of Simper, the Tenth Circuit held that the district court erred in dismissing the plaintiffs' negligent-supervision claim, which § 502 of ERISA did not completely preempt, because the plaintiffs' claim implicated an independent legal duty recognized in agency and tort law that arose out of agency relationships.  See 407 F.3d at 1137.

## ANALYSIS

The Court will grant the Motion to Dismiss.  Because the Plaintiffs have conceded that ERISA preempts their state law claims against the GE Defendants, the Court will dismiss the Plaintiffs' state law claims against the GE Defendants.  Thus, only the ERISA claim the Plaintiffs have asserted in Count VI remains against the GE Defendants.  The Court concludes that the Plaintiffs have not stated a plausible cause of action against MetLife under the Unfair Insurance Practices Act, because MetLife does not have fair notice of what claim under this statute the Plaintiffs seek to pursue against it.  Additionally, the allegations in the Plaintiffs' Complaint lead to the conclusion that ERISA preempts the remaining state law claims against MetLife.  Thus, only the ERISA claim the Plaintiffs have asserted in Count VI remains against MetLife.  Because the Plaintiffs do not appear to oppose the request, and because the Court believes the request is otherwise appropriate, the Court will grant the GE Defendants' and Metlife's request in their Motion to Dismiss that the Court provide them with twenty-one days to file their answers from the date of entry of this opinion.  Because the Court does not find it necessary, for the purposes of resolving the Motion to Dismiss, to consider the exhibit which the Plaintiffs seek to strike, the Court will deny

the Motion to Strike as moot.

## I.   THE PLAINTIFFS HAVE CONCEDED THAT ERISA PREEMPTS THE STATE LAW CLAIMS THEY HAVE ASSERTED AGAINST THE GE DEFENDANTS.

The GE Defendants and MetLife argue in their Motion to Dismiss that ERISA preempts the state law claims against both the GE Defendants and MetLife.  The Plaintiffs have conceded that ERISA preempts the state law claims they have asserted against the GE Defendants.  See Response at 3 ("State Court claims against GE are, on the other hand, tenuous and Plaintiffs acquiesce to the claim by GE that the state law claims are preempted."); Mar. 22, 2012 Tr. at 7:4-6 (Court, Everett).  Courts are entitled to rely upon counsel's concessions.  See United States v. Ventura-Perez, 666 F.3d 670, 676 (10th Cir. 2012)("Courts could not function properly if concessions by counsel cannot be relied upon."); Texaco, Inc. v. Hale, 81 F.3d 934, 938 (10th Cir. 1996)("Even had the scope of the remand allowed the district court to consider this issue, it was entitled to rely upon Appellants' concession, and they are now without a basis for objection.").  Consequently, the Court will dismiss those claims against the GE Defendants.  Thus, only the ERISA claim the Plaintiffs have asserted in Count VI remains against the GE Defendants.

## II.   THE PLAINTIFFS HAVE NOT STATED A PLAUSIBLE CLAIM FOR RELIEF UNDER THE UNFAIR INSURANCE PRACTICES ACT AGAINST METLIFE.

With respect to their claim under the Unfair Insurance Practices Act, the Plaintiffs have not stated a plausible claim for rule 12(b)(6) purposes.  In Count V, which contains the claim for violations of the Unfair Insurance Practices Act, the Plaintiffs allege that they "have been significantly harmed by the actions, inactions, false certification, and other intentional or negligent processes used by Defendants to injure" them.  Complaint ¶ 32, at 15.  They assert that "[t]he culpable actions of the Defendants as described in this Complaint, violate the provisions of the Insurance Trade Practices and Fraud statutes NMSA 1978, §§ 59A-16-1 et seq."  Complaint ¶ 32,

at 15.  The Plaintiffs allege that "Defendants AAA and GE (and all related entities, including Met Life) were grossly negligent in failing to review and investigate other information and documentation besides a death certificate" to determine the correct beneficiary.  Complaint ¶ 33, at 15-16.  The Plaintiffs contend that "[i]t is a violation of NMSA 1978, §§ 59A-16-1 through 59A-16-30 (insurance trade practices and fraud statute), for failing to properly investigate a claim, disregarding all competent evidence of death in a homicide/suicide situation where a prima facie initiatory investigation" would have revealed who was the correct beneficiary.  Complaint ¶ 35, at 16.

Because the Unfair Insurance Practices Act contains a voluminous number of statutory sections and subsections, it is not possible to tell from the Plaintiffs' pleadings what cause of action they attempt to assert under the Unfair Insurance Practices Act.  Consequently, MetLife does not have fair notice of the Unfair Insurance Practices Act claim against it.  "The need at the pleading stage for allegations plausibly . . . reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Bell Atl. Corp. v. Twombly, 550 U.S. at 557.  While there are various factual allegations contained in the Complaint, the Court cannot determine what cause of action the Plaintiffs intend to set forth under the Unfair Insurance Practices Act.  There is no attempt to set forth the elements of a specific statutory cause of action under the Unfair Insurance Practices Act, a lengthy statute with comprehensive insurance regulations that contains approximately thirty-six different statutory sections, some of which contain a voluminous number of subsections proscribing a variety of different conduct.  See N.M.S.A. 1978, §§ 59A-16-1 to 59A-16-30.  These different statutory sections contain a large amount of potential causes of action and proscribe a wide variety of different conduct.  It is difficult for the Court to say that the Plaintiffs' allegations, when the Court cannot even determine what cause of action the

-31-

Plaintiffs intend to bring, provide MetLife with fair notice of the claim asserted against it.  See Bell

Atl. Corp. v. Twombly, 550 U.S. at 555 n.3 ("Without some factual allegation in the complaint, it

is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the

nature of the claim, but also 'grounds' on which the claim rests.").  The Honorable Bruce D. Black,

United States District Judge for the United States District Court for the District of New Mexico,

concluded, in 2001, even before the Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal decisions,

that a plaintiff's pleadings were inadequate in a case that also dealt with the Unfair Insurance

Practices Act:

> Dr. Yumukoglu alleges generally that Provident's conduct "violates one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)," the section of the New Mexico Unfair Insurance Practices Act that prohibits unfair claims practices. Dr. Yumukoglu does not specify which of the fifteen provisions of this section he feels Provident has violated, and after a review of the statute, the Court cannot perceive which subsection could have been violated under the fact alleged.  At the very least, Dr. Yumukoglu has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, it is not clear either what Dr. Yumukoglu is claiming or to what relief he is entitled under § 56A-16-20.  Dr. Yumukoglu's claim appears, like his claim for breach of the duty of good faith and fair dealing, to be based on Provident's alleged bad faith in terminating his disability benefits.  As discussed above, the Court finds that Provident's decision to terminate Dr. Yumukoglu's benefits did not amount to bad faith.  Provident's motion for summary judgment on Plaintiff's claim for statutory violation is granted.

Yumukoglu v. Provident Life & Accident Ins. Co., 131 F.Supp.2d 1215, 1227 (D.N.M. 2001)(Black,

J.)(footnote omitted)(citations omitted).

There is not even "a formulaic recitation of the elements of a cause of action" to guide the

Court or MetLife in determining what claim the Plaintiffs intend to assert under this statute.  Bell

Atl. Corp. v. Twombly, 550 U.S. at 555.  Both the Court and the Defendants cannot assess the merits

of the Plaintiffs' cause of action under this statute if they cannot determine the section of the statute

upon which the Plaintiffs intend to rely.  The Unfair Insurance Practices Act is not a simple statute that contains one or two causes of action; it contains many potential causes of action.  N.M.S.A. 1978, § 59A-16-20 alone makes fifteen different kinds of conduct actionable in its fifteen subsections, and many of those fifteen subsections contain similar or overlapping elements.  See N.M.S.A. 1978, § 59A-16-20.  Under the circumstances, the Court cannot reasonably conclude that the current allegations give MetLife fair notice of the Unfair Insurance Practices Act claim asserted against it.  Without some more specific reference to a statutory section within the Unfair Insurance Practices Act, or some potential elements upon which the Plaintiffs intend to rely, it is not possible to determine what cause of action the Plaintiffs attempt to set forth.  Consequently, the Court will dismiss the Unfair Insurance Practices Act claim asserted in Count V.

Furthermore, and perhaps most important for the resolution of the Motion to Dismiss, based on the lack of specificity in Count V, the Court cannot properly assess whether ERISA preempts the Unfair Insurance Practices Act claim against MetLife.  The Court has in the past held that ERISA preempts certain claims under this act.  See Schoen v. Presbyterian Health Plan, Inc., Nos. 08-0687 and 08-0979, 2009 WL 1299680, at *7-8 (D.N.M. Feb. 19, 2009)(Browning, J.)("Schoen's claims for unfair insurance practices . . . . fall within the ambit of 29 U.S.C. § 1132(a)(1)(B) and are pre-empted, because Schoen is seeking to enforce his rights to proper processing of claims made under his employee health-benefits policy.  ERISA, therefore, completely pre-empts these claims . . . .").  Nevertheless, because the Unfair Insurances Practices Act deals extensively with insurance, some causes of action under this act may fall within ERISA's savings clause for insurance regulations.  See 29 U.S.C. § 1144(b)(2)(A) (§ 514(b)(2)(A) of ERISA).  To make that determination, the Court would need to be able to assess whether: (i) the state law is specifically directed toward entities engaged in insurance; and (ii) the state law substantially affects the risk

-33-

pooling arrangement between the insurer and the insured.  See Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. at 341-42.  The Court cannot make that determination without knowing what statutory sections and/or subsections on which the Plaintiffs intend to rely under the Unfair Insurances Practices Act.  Ultimately, the pleading defect is a curable one, and the Court will entertain any motion from the Plaintiffs seeking leave to amend.  The Plaintiffs' current pleadings, however, are inadequate for this claim.  The Court cannot do its job to evaluate the sufficiency of this claim based on the current allegations.

**III.    THE CURRENT ALLEGATIONS IN THE PLAINTIFFS' COMPLAINT LEAD TO THE CONCLUSION THAT ERISA PREEMPTS THE PLAINTIFFS' STATE LAW CLAIMS -- OTHER THAN THE UNFAIR INSURANCE PRACTICES ACT CLAIM -- AGAINST METLIFE.**

The Plaintiffs have alleged that "Defendant Metropolitan Life Insurance (Met Life) is the (ERISA) Plan administrator for the GE life insurance policy" and "the seller of the insurance property."  Complaint ¶ 1, at 2.  Generally, ERISA preempts claims against an administrator of a life insurance plan relating to improper administration of the proceeds of a life insurance policy.  An entity designated as a fiduciary in an employee benefits plan is a fiduciary for ERISA purposes.  See In re Luna, 406 F.3d at 1201 ("Once deemed a fiduciary, either by express designation in the plan documents or the assumption of fiduciary obligations (the functional or de facto method), the fiduciary becomes subject to ERISA's statutory duties.").  ERISA would normally preempt claims against ERISA fiduciaries that relate to the fiduciaries improper handling of funds from an employee benefits plan.  See Aetna Health Inc. v. Davila, 542 U.S. at 210.  In Aetna Health Inc. v. Davila, the Supreme Court set forth the test for finding complete preemption:

> Where the individual is entitled to such [claimed] coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at

-34-

> some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

542 U.S. at 210.  Additionally, state laws are expressly preempted when they relate to an employee benefit plan and preempted under conflict preemption when they provide for additional remedies beyond those available under the respective ERISA cause of action.  See Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1185 ("State law causes of action, then, are preempted under ERISA both when they are expressly preempted by the terms of the statute as well as when the state law provides remedies beyond those contained in ERISA itself.").

This statement in the Plaintiffs' Complaint that MetLife is a plan administrator qualifies as a judicial admission.  "A pleading prepared by an attorney is an admission, however, because the attorney presumably speaks for the litigant."  Rooms v. SEC, 444 F.3d 1208, 1213 (10th Cir. 2006).  "Where, however, the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight."  Smith v. Argent Mortg. Co., 331 F.App'x 549, 556 (10th Cir. 2009)(unpublished).  While the Court will entertain a motion from the Plaintiffs seeking leave to amend their Complaint, as the Tenth Circuit has directed that district courts should do so when there may have been some error underlying the judicial admission, the Court must grant the Motion to Dismiss based on the allegations in the Complaint as they stand at this time.  Beyond this allegation that MetLife was the plan administrator, there are various other allegations supporting the conclusion that MetLife was a fiduciary.  The nature of MetLife's alleged misconduct is also such that a claim seeking to hold MetLife liable for that conduct would fall within ERISA's preemptive scope.

A.   **METLIFE IS AN ERISA FIDUCIARY BASED ON THE ALLEGATIONS IN THE PLAINTIFFS' COMPLAINT.**

ERISA provides the following general definition for fiduciaries under the statute:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (§ 3(21)(A) of ERISA).  The Tenth Circuit has explained that "under ERISA, an individual 'may acquire fiduciary status' either by (a) being expressly appointed by the plan as a fiduciary, or (b) by 'exercis[ing] the fiduciary functions set forth in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).'"  Holdeman v. Devine, 474 F.3d at 777 (10th Cir. 2007).  "Once deemed a fiduciary, either by express designation in the plan documents or the assumption of fiduciary obligations (the functional or de facto method), the fiduciary becomes subject to ERISA's statutory duties."  In re Luna, 406 F.3d at 1201.

It is unclear from the allegations in the Plaintiffs' Complaint whether MetLife was "expressly appointed by the plan as a fiduciary."  Holdeman v. Devine, 474 F.3d at 777.  While the Plaintiffs allege that MetLife was the plan administrator, there is no reference to a formal designation within the plan of MetLife as an administrator.  It may well be that there was such a designation, but the Court must view the Plaintiffs' allegations in the light most favorable to the Plaintiffs at this stage of the proceedings.  The allegations indicate, however, that MetLife had "authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A).  It is important to emphasize that a person qualifies as a fiduciary under ERISA if the person "exercises any authority or control respecting management or disposition of its assets."  29 U.S.C.

§ 1002(21)(A) (emphasis added).  Thus, if MetLife exercised any authority or control respecting

management or disposition of the life insurance assets under the ERISA plan, regardless whether

it was formally designated as a fiduciary, it qualifies as a fiduciary for ERISA purposes.  The

Plaintiffs have alleged that Met Life "negligently and grossly negligently failed to pay life insurance

benefits to the legal beneficiary, negligently relying upon hearsay information to pay death benefits

(pension and securities/financial benefits) to the wrong beneficiary."  Complaint ¶ 1, at 2.  The

Plaintiffs also allege that MetLife has various connections to the ERISA plan, including that the GE

Defendants "in bad faith and in gross breach of contract, negligence and or intentional violation of

ERISA and all emoluments, grossly negligently employed Met Life to administer the life insurance

policy benefits and paid life insurance proceeds and other pension and security/financial assets to

the wrong person."  Complaint ¶ 19, at 9.  While the Court must draw all reasonable inferences in

the Plaintiffs' favor, they have alleged that MetLife mishandled the funds by paying them to the

wrong beneficiary.  That alleged conduct qualifies as exercising, at the very least, "control

respecting . . . disposition of" the plan's "assets."  29 U.S.C. § 1002(21)(A).

No discretionary authority is required under this portion of 29 U.S.C. § 1002(21)(A), because

MetLife had control over the disposition of the funds at issue.  As the Tenth Circuit has recognized:

> Discretion is conspicuously omitted from the fiduciary function of controlling plan assets. Indeed, the statute provides that "any authority or control" over the management or disposition of plan assets is sufficient to render fiduciary status.  As other courts have recognized, this distinction evidences Congress's intent to treat control over assets differently than control over management or administration.  In Congress's judgment, and consistent with general trust law, parties controlling plan assets are automatically in a position of confidence by virtue of that control, and as such they are obligated to act accordingly.

David P. Coldesina, DDS v. Estate of Simper, 407 F.3d 1126, 1132 (10th Cir. 2005)(emphasis in

original)(footnote omitted)(citations omitted).  Accord P. Widenbeck, Fed. Judicial Ctr., ERISA in

the Courts 142 (2008) ("[A]ny reference to discretion is notably absent from the second part of clause (i) [of 29 U.S.C. § 1002(21)(A)], which provides that the exercise of 'any authority or control respecting the management or disposition of [plan] assets' also triggers fiduciary status."). Drawing all reasonable inferences in the Plaintiffs' favor, MetLife had control over the life insurance proceeds at some point under the allegations in the Complaint. The Plaintiffs allege that Met Life "negligently and grossly negligently failed to pay life insurance benefits to the legal beneficiary, negligently relying upon hearsay information to pay death benefits (pension and securities/financial benefits) to the wrong beneficiary." Complaint ¶ 1, at 2. They allege that MetLife paid various benefits to the wrong beneficiary. It is not relevant for fiduciary purposes whether MetLife had any discretion where to send the funds under the second part of clause (i) in 29 U.S.C. § 1002(21)(A). See David P. Coldesina, DDS v. Estate of Simper, 407 F.3d at 1132. Other provisions in 29 U.S.C. § 1002(21)(A), on the other hand, require discretion. See 29 U.S.C. § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . . ."). Thus, MetLife is an ERISA fiduciary based on the allegations in the Complaint.

**B.   ERISA PREEMPTS THE PLAINTIFFS' STATE LAW CLAIMS AGAINST METLIFE BASED ON THE ALLEGATIONS IN THE PLAINTIFFS' COMPLAINT.**

Now that the Court has determined that MetLife is an ERISA fiduciary under the allegations in the Complaint, it is necessary for the Court to determine whether ERISA preempts the Plaintiffs' state law claims against MetLife. The Court concludes that the Plaintiffs' state law claims against MetLife that seek punitive damages fall within the preemptive scope of ERISA § 502(a), 29 U.S.C. § 1132(a) -- a form of complete preemption for jurisdictional purposes as well as a form of conflict preemption. The state law claims against MetLife also fall within the preemptive scope of ERISA

§ 514, 29 U.S.C. § 1144.

Section 502(a)(1) provides a cause of action to any plan beneficiary or participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a).  Even absent the express preemption provision in 29 U.S.C. § 1144 (§ 514 of ERISA), § 502(a) would still preempt state law claims that conflict with the enforcement mechanism § 502(a) provides.  See Aetna Health Inc. v. Davila, 542 U.S. at 214 n.4.  As the Supreme Court has held:

> Respondents also argue that ERISA § 502(a) completely pre-empts a state cause of action only if the cause of action would be pre-empted under ERISA § 514(a) . . . . But a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive.

Aetna Health Inc. v. Davila, 542 U.S. at 214 n.4. Additionally, state laws are expressly preempted when they relate to an employee benefit plan.  See Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1185 ("State law causes of action, then, are preempted under ERISA both when they are expressly preempted by the terms of the statute as well as when the state law provides remedies beyond those contained in ERISA itself.").

The Plaintiffs do not readily distinguish against which Defendants they seek to assert their claims in the respective Counts in the Complaint.  Because of the lack of clarity in the Plaintiffs' pleadings, and because the Plaintiffs' refer to MetLife in each of the following Counts, the Court will assume that the Plaintiffs have asserted state law claims against MetLife in the following Counts: (i) Count II -- Bad Faith and Breach of Contract;[5] (ii) Count III -- Gross Negligence; (iii) Count V -- Unfair Insurance Practices Act Violations, Unfair Trade Practices Act Violations,

---

[5]While the Plaintiffs mention MetLife in Count II, it is not clear whether they intend to assert Count II against MetLife.  See Complaint ¶ 19, at 9.

Damages, Punitive Damages.

Count II asserts that various Defendants breached their contractual obligations and acted in bad faith by paying the wrong beneficiaries with the respective funds from various benefit plans, including life insurance proceeds, pension account funds, and securities account funds.  For instance, the Plaintiffs allege that "GE in bad faith and in gross breach of contract, negligence and or intentional violation of ERISA and all emoluments, grossly negligently employed Met Life to administer the life insurance policy benefits and paid life insurance proceeds and other pension and security/financial assets to the wrong person."  Complaint ¶ 19, at 9.  Notably, the Plaintiffs seek punitive damages in this Count.  See Complaint ¶ 21, at 10.  The Plaintiffs have conceded that an ERISA plan exists and that the GE Defendants were sufficiently involved in the ERISA plan that the state law claims against them are preempted.  See Response at 8-9 ("The GE life insurance trust, ERISA Employee Welfare Plan Benefit in question here is an ERISA regulated Plan Benefit.").

Count II includes a claim "to recover benefits due to him under the terms of [the] plan" or "to enforce . . . rights under the terms of the plan" within the meaning of 29 U.S.C. § 1132(a)(1)(B).  29 U.S.C. § 1132(a)(1)(B).  The Plaintiffs seek to recover benefits from the plan that were allegedly paid to the wrong beneficiary -- C. Gonzales.  Courts have found that ERISA preempts similar breach of contract claims.  As the Tenth Circuit has stated, "[c]ommon law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan."   Lettes v. Kinam Gold Inc., 3 F.App'x 783, 786 (10th Cir. 2001)(unpublished)(quoting Milton v. Scrivner, Inc., 53 F.3d 1118, 1121 (10th Cir. 1995)).  The Supreme Court has also held:

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty

(state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

Aetna Health Inc. v. Davila, 542 U.S. at 210.  Conflict preemption under ERISA § 502(a)(1)(B)

applies, because the Plaintiffs seek punitive damages in Count II.  See Allison v. UNUM Life Ins.

Co. of Am., 381 F.3d at 1024-27; Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1185 ("State

law causes of action, then, are preempted under ERISA both when they are expressly preempted by

the terms of the statute as well as when the state law provides remedies beyond those contained in

ERISA itself.").  The Tenth Circuit has found that ERISA preempted a plaintiff's bad-faith breach-

of-contract claim for denial of benefits under a health insurance and disability policy: (i) under

conflict preemption, because the claim "conflict[ed] with ERISA's remedial scheme," as the

plaintiff sought punitive damages; and (ii) under express preemption, because her claim did not fall

within ERISA's insurance exemption, as it was not targeted directly toward insurance, nor did it

substantially affect the risk pooling agreement between the insurer and the insured.  Allison v.

UNUM Life Ins. Co. of Am., 381 F.3d at 1024-27.  The Plaintiffs have not disputed that the

employee benefits to which they are allegedly entitled are part of ERISA plans.  See Response at

8-9 ("The GE life insurance trust, ERISA Employee Welfare Plan Benefit in question here is an

ERISA regulated Plan Benefit.").  Based on the Plaintiffs' allegations that they did not receive the

benefits to which they were entitled from MetLife, "[i]t is clear, then, that [the Plaintiffs] complain

only about [not receiving benefits] promised under the terms of ERISA-regulated employee benefit

plans." Aetna Health Inc. v. Davila, 542 U.S. at 210.  The Plaintiffs identify no independent duty

under state law requiring MetLife to pay these benefits outside of the ERISA plan.

Ultimately, the labels that the Plaintiffs attach to their claims -- tort or contract -- are irrelevant, because "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim."  Aetna Health Inc. v. Davila, 542 U.S. at 214-16.  As the Supreme Court has stated:

> [T]he Court of Appeals found significant that respondents "assert a tort claim for tort damages" rather than "a contract claim for contract damages," and that respondents "are not seeking reimbursement for benefits denied them."  But, distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would "elevate form over substance and allow parties to evade" the pre-emptive scope of ERISA simply "by relabeling their contract claims as claims for tortious breach of contract."  Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism.

Aetna Health Inc. v. Davila, 542 U.S. at 214-15.  The Plaintiffs ultimately seek to enforce their rights under the ERISA plan, which means that they must rely on an ERISA cause of action to do so.  See Aetna Health Inc. v. Davila, 542 U.S. at 214-15 ("Petitioners' potential liability . . . derives entirely from the particular rights and obligations established by the benefit plans. . . . Hence, respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.").  Furthermore, those claims implicate MetLife's fiduciary capacity within the context of the ERISA plan -- MetLife's management or control over the disposition of the assets at issue.

For many of the same reasons, ERISA preempts Count III -- the Plaintiffs' claim for gross negligence.  The Plaintiffs complain of the same basic misconduct in Count III as they do in Count II -- MetLife failing to pay the correct beneficiary by conducting an inadequate investigation into whom to pay as the beneficiary.  Largely, the Plaintiffs have attached a different label to the same

alleged misconduct and treated the alleged misconduct as a tort claim.  The Supreme Court has

emphasized that such labels between tort and contract claims are ultimately irrelevant for ERISA

preemption purposes:

> [T]he Court of Appeals found significant that respondents "assert a tort claim for tort damages" rather than "a contract claim for contract damages," and that respondents "are not seeking reimbursement for benefits denied them."  But, distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would "elevate form over substance and allow parties to evade" the pre-emptive scope of ERISA simply "by relabeling their contract claims as claims for tortious breach of contract."  Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism.

Aetna Health Inc. v. Davila, 542 U.S. at 214-15.  The Plaintiffs ultimately seek to enforce their

rights under the ERISA plan, which means that they must rely on an ERISA cause of action to do

so.  See Aetna Health Inc. v. Davila, 542 U.S. at 214-15 ("Petitioners' potential liability . . . derives

entirely from the particular rights and obligations established by the benefit plans. . . . Hence,

respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated

plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.").  Much

like the claim asserted in Count II, the Plaintiffs seek punitive damages under Count III for the

alleged violations, which triggers conflict preemption under ERISA.  See Allison v. UNUM Life

Ins. Co. of Am., 381 F.3d at 1024-27; Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1185

("State law causes of action, then, are preempted under ERISA both when they are expressly

preempted by the terms of the statute as well as when the state law provides remedies beyond those

contained in ERISA itself.").  The Tenth Circuit has similarly recognized that tort claims that seek

to hold a defendant liable for their responsibilities under an ERISA plan are preempted:

> The complaint asserts Texaco "breached its employment contract with the plaintiff and committed fraud" by specifying a benefit start-date of May 1, 2003, rather than March 1, 2003; refusing to explain why the monthly benefit, after

> reduction for a "QDRO" (qualified domestic relations order), would be $495.97 rather than the $552.75 Mr. Karls thought it should be; and failing to commence monthly benefit payments by the time suit was filed. . . .
>
> . . . .
>
> . . . He also appears to contend that his claims did not implicate ERISA in the first place, because he alleged fraud and breach of contract under state law, not the violation of ERISA duties.  It is well-established, however, that "common law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan."

Karls v. Texaco, Inc., 139 F.App'x 29, 32 (10th Cir. 2005)(unpublished).  Nothing in the Plaintiffs' allegations indicate that they seek to enforce an independent legal duty that arises outside the ERISA plan at issue.

ERISA similarly preempts the claim under the Unfair Practices Act, N.M.S.A. 1978, §§ 57-12-1 to 57-12-26, asserted in Count V.  The Court has already dismissed the Unfair Insurance Practices Act claim asserted in Count V under rule 12(b)(6).  Notably, Count V also seeks punitive damages.  Count V relies on many of the same factual allegations as Counts II and III, including that "Defendants AAA and GE (and all related entities, including MetLife) were grossly negligent in failing to review and investigate other information and documentation besides a death certificate" in determining which beneficiary to pay.  Complaint ¶ 33, at 15-16.  The Tenth Circuit has recognized that ERISA can preempt statutory causes of action.  See Kelley v. Sears, Roebuck & Co., 882 F.2d at 456 ("Denette decided the saving clause did not preserve a bad faith claim based on Colo. Rev. Stat. § 10-3-1104, the very statute under which Kelley seeks relief. . . . We agree with the Denette court's analysis of § 10-3-1104 and its application of Pilot Life.").  The Court has also previously found that ERISA preempts some statutory causes of action, such as certain claims asserted under the Unfair Insurance Practices Act.  See Schoen v. Presbyterian Health Plan, Inc., 2009 WL 1299680, at *7-8 ("Schoen's claims for unfair insurance practices . . . . fall within the

ambit of 29 U.S.C. § 1132(a)(1)(B) and are pre-empted, because Schoen is seeking to enforce his

rights to proper processing of claims made under his employee health-benefits policy.  ERISA,

therefore, completely pre-empts these claims . . . .").  Two other United States District Court Judges

in the District of New Mexico have also found that ERISA preempted certain claims under the

Unfair Insurance Practices Act.  See Nechero v. Provident Life & Accident Ins. Co., 795 F.Supp.

at 380-81 (Mechem, J.)("The Necheros charge breach of contract, bad faith, infliction of emotional

distress, unreasonable delay, and violations of the New Mexico Unfair Practices and Unfair

Insurance Practices Acts.  Based on the foregoing analysis, I find that all of these claims are

preempted as a matter of law."); Wexler v. Brokerage Servs., Inc., 1989 WL 379862, at *2-3

(Burciaga, J.)(relying on the Tenth Circuit's decision in Kelley v. Sears, Roebuck & Co. to conclude

that ERISA preempts claims for misrepresentation and unfair claims practices pursuant to the

equivalent sections of the New Mexico unfair-insurance-practices statute).  This situation is

indistinguishable from the one the Court faced in Schoen v. Presbyterian Health Plan, Inc., as the

Plaintiffs' Unfair Practices Act claims "fall within the ambit of 29 U.S.C. § 1132(a)(1)(B) and are

pre-empted, because [the Plaintiffs are] seeking to enforce [their] rights" under the ERISA plan.

2009 WL 1299680, at *7-8.  Much like their other claims, the Plaintiffs seek punitive damages for

the alleged violations of the Unfair Practices Act, making their claims conflict preempted.  See

Allison v. UNUM Life Ins. Co. of Am., 381 F.3d at 1024-27; Kidneigh v. UNUM Life Ins. Co. of

Am., 345 F.3d at 1185 ("State law causes of action, then, are preempted under ERISA both when

they are expressly preempted by the terms of the statute as well as when the state law provides

remedies beyond those contained in ERISA itself.").  Thus, the Court finds that ERISA preempts

the Unfair Practices Act claim asserted in Count V.

### C.   NONE OF THE PLAINTIFFS' OTHERWISE PREEMPTED CLAIMS FALL WITHIN THE INSURANCE EXCEPTION UNDER ERISA.

ERISA contains a savings clause for laws that regulate insurance.  See 29 U.S.C. § 1144(b)(2)(A) (§ 514(b)(2)(A) of ERISA) ("Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.").  The Supreme Court has explained how ERISA § 514(b)(2)(A) operates: "To summarize the pure mechanics of the provisions quoted above: If a state law 'relate[s] to . . . employee benefit plan[s],' it is pre-empted.  The saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance.'"  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 45.  The Supreme Court has recognized that a Court must consider two factors to determine whether a state law is a law that regulates insurance under ERISA § 514(b)(2)(A): (i) "the state law must be specifically directed toward entities engaged in insurance"; and (ii) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured."  Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. at 341-42.

None of the Plaintiffs' otherwise preempted claims fall within ERISA's insurance exception. The Plaintiffs argue in a conclusory manner that their claims fall within ERISA's insurance exception.  See Response at 9.  Count II and Count III assert generally applicable state law causes of action for bad-faith breach of contract and gross negligence.  Thus, the claims asserted in those Counts fail the first prong of the test stated in Kentucky Association of Health Plans, Inc. v. Miller, because "the state law[s] [are not] specifically directed toward entities engaged in insurance."  538 U.S. at 341-42.  Likewise, the Unfair Practices Act applies to a host of commercial conduct and contains only one reference within the entire statute to insurance, specifically, an exclusion of the sale of insurance from the definition of door-to-door sales transactions.  See N.M.S.A. 1978, § 57-

12-21(C)(3) ("A door-to-door sale does not include a transaction . . . pertaining . . . to the sale of insurance . . . ."). Thus, a claim asserted under the Unfair Practices Act -- which applies to everything from motor vehicle transactions, see N.M.S.A. 1978, § 57-12-6 (entitled: "Misrepresentation of motor vehicles; penalty"), to door-to-door sales transactions, N.M.S.A. 1978, § 57-12-21 (entitled: "Door-to-door sales; contracts; requirements; prohibitions") -- is not a state law specifically directed towards entities engaged in insurance. See Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. at 341-42. The Court notes that it has already dismissed the Unfair Insurance Practices Act claim under rule 12(b)(6).[6] The Court finds that ERISA preempts the Plaintiffs' state law claims, other than the Unfair Insurance Practices Act claim, against MetLife.[7]

## IV.   THE COURT WILL GRANT THE GE DEFENDANTS' AND METLIFE'S REQUEST TO HAVE TWENTY-ONE DAYS TO FILE THEIR ANSWERS AFTER THE COURT HAS DECIDED THE MOTION TO DISMISS.

Because the Plaintiffs do not appear to oppose the request, and because the Court believes the request is otherwise appropriate, the Court will grant the GE Defendants' and Metlife's request in their Motion to Dismiss that the Court provide them with twenty-one days to file their answers from the date of entry of this opinion. Rule 12(a)(4) provides that, once a party has served a motion

---

[6] As the Court previously stated, there are not sufficient allegations in the Plaintiffs' Complaint for the Court to properly evaluate whether the insurance exception within ERISA would apply to the Plaintiffs' Unfair Insurance Practices Act claim.

[7] While the Court will entertain a motion from the Plaintiffs seeking leave to amend their pleadings, the Court asks the Plaintiffs to consider whether a motion to amend would be futile with respect to the allegations against MetLife. While the Plaintiffs may be able to add additional allegations other than those before the Court, the current allegations raise a significant likelihood that ERISA would preempt any state law claims against MetLife, because of the nature of MetLife's alleged misconduct and because the parties have acknowledged the existence of an ERISA plan that underlies this dispute. Because the Plaintiffs have incorporated by reference all of the Complaint's allegations in Count VI -- the ERISA Count -- those allegations would still apply to the ERISA claim asserted in Count VI.

under rule 12, and once a "court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4). Nevertheless, rule 12(a) indicates that a court may set "a different time" to respond under rule 12(a). The Plaintiffs have expressed no opposition to this request. The Court believes this request is appropriate given the complexity of the allegations in the Plaintiffs' Complaint and the relatively small amount of delay the seven-day extension will create. Thus, the Court will grant the request and permit the GE Defendants and MetLife to have twenty-one days to file their answers from the date of entry of this opinion.

**V.     BECAUSE IT IS UNNECESSARY TO CONSIDER THE GE PLANS BENEFITS HANDBOOK THAT THE PLAINTIFFS SEEK TO STRIKE TO RESOLVE THE MOTION TO DISMISS, THE COURT WILL DENY THE MOTION TO STRIKE AS MOOT.**

The Plaintiffs seek to strike the GE Plans Benefits Handbook attached to the GE Defendants and MetLife's Reply. See Motion to Strike at 1-2. They assert that one of the pages in the GE Plans Benefits Handbook "was not produced to Plaintiffs with the handbook excerpts provided by MetLife with its letter of March 16, 2011, which MetLife communicated to be the plan's justification under ERISA for its having paid the wrong beneficiary." Motion to Strike at 2. Ultimately, the Court was able to resolve the Motion to Dismiss on the Plaintiffs' allegations and without consulting the excerpt from the GE Plans Benefits Handbook. The Court does not place any weight on this GE Plans Benefits Handbook in reaching its decision on the Motion to Dismiss. Consequently, the Court will deny the Motion to Strike as moot.

**IT IS ORDERED** that the Motion to Dismiss the Plaintiffs' State Law Claims of MetLife, GE, and the GE Plans, filed June 27, 2011 (Doc. 8), is granted. The Court will deny as moot the Plaintiffs' Motion to Strike Exhibit "B," filed March 22, 2012 (Doc. 65). The Court will dismiss

the Plaintiffs' state law claims against Defendants General Electric Company, General Electric

Savings and Security, General Electric Pension Trust, and Metropolitan Life Insurance.  Thus, only

the ERISA claim the Plaintiffs have asserted in Count VI remains against the GE Defendants and

MetLife.  The GE Defendants and MetLife will have twenty-one days to file their answers from the

date of entry of this opinion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Peter Everett, IV
Everett Law
Albuquerque, New Mexico

     *Attorney for the Plaintiffs*

P. Scott Eaton
Eaton Law Office, P.C.
Albuquerque, New Mexico

     *Attorney for AAA Life Insurance Company*

Larry J. Montano
Holland & Hart, LLP
Santa Fe, New Mexico

*--and--*

Jack M. Englert, Jr.
Holland & Hart, LLP
Greenwood Village, Colorado

     *Attorneys for General Electric Company, General Electric Pension Trust,*
       *General Electric Savings & Security, and Metropolitan Life Insurance Company*

Christopher D. Woodward
Office of General Counsel
New Mexico Department of Health
Santa Fe, New Mexico

     *Attorney for New Mexico Department of Health*

Courtenay L. Keller
D. Chet Alderete
Riley, Shane & Keller, PA
Albuquerque, New Mexico

*Attorneys for University of New Mexico and Office of Medical Investigator*

Michael A. Peters
Albuquerque, New Mexico

*Defendant pro se*

Peters & Associates, PA
Albuquerque, New Mexico

*Defendant pro se*