IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF KATHERINE J.
GONZALES, SCOTT BOX, individually and
as Personal Representative, and RUSSELL
BOX, children of Katherine J. Gonzales,

    Plaintiffs,

vs.

                                                              Civ. No. 11-486 KG/GBW

AAA LIFE INSURANCE COMPANY,
a subsidiary of AAA AUTO CLUB,
GENERAL ELECTRIC COMPANY,
GENERAL ELECTRIC PENSION TRUST,
G.E. SAVINGS & SECURITY PROGRAM,
METROPOLITAN LIFE INSURANCE COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant AAA Life Insurance Company's Motion for Summary Judgment (Motion for Summary Judgment), filed on August 16, 2013. (Doc. 129). Plaintiffs filed a response on September 6, 2013, and Defendant AAA Life Insurance Company, a subsidiary of AAA Auto Club, (AAA) filed a reply on September 25, 2013. (Docs. 138 and 141). Having considered the Motion for Summary Judgment, the accompanying briefs, and the material evidence of record, the Court grants the Motion for Summary Judgment and will, therefore, dismiss the claims against AAA with prejudice.

*A. Undisputed Material Evidence*

This is a wrongful life insurance payout case arising from the March 2, 2009, murder of Katherine Gonzales by her husband, Wayne Gonzales, and Wayne Gonzales' suicide that same day.

In 2006, AAA issued a life insurance policy to Wayne Gonzales in which he named Katherine Gonzales as the primary beneficiary and named his brother, Carl Gonzales, as the contingent beneficiary. (Doc. 129-1) at 1-2, ¶ 3. On April 15, 2009, AAA received notice of a life insurance claim from a New Mexico AAA agent who advised AAA "that Wayne Gonzales had killed Katherine Gonzales and then had killed himself, and that claim forms should be submitted to the contingent beneficiary, Carl Gonzales." *Id.* at 2, ¶ 4. Consequently, on April 16, 2009, AAA mailed a claim form to Carl Gonzales and requested certified death certificates and a copy of the police report. *Id.* at ¶ 5. On April 27, 2009, AAA received the completed claim form, the certified death certificates for Wayne and Katherine Gonzales, and a copy of the police report. *Id.* at ¶ 6.

Katherine Gonzales' death certificate states that she died at a hospital at 8:21 a.m. on March 2, 2009, and that she died as a result of a homicide. *Id.* at 43. The cause of death was listed as multiple gunshot wounds. *Id.* The death certificate notes that Katherine Gonzales was married at the time of death and that her surviving spouse was Wayne Gonzales. *Id.*

Wayne Gonzales' death certificate states that he died at home at 1:37 p.m. on March 2, 2009, and that he died as a result of a suicide. *Id.* at 42. The cause of death was listed as a gunshot wound to the head. *Id.* The death certificate also notes that Wayne Gonzales was widowed at the time of death. *Id.*

In the police report dated March 2, 2009, the reporting officer, J. Stott, states that a homicide/suicide occurred at Wayne and Katherine Gonzales' residence. *Id.* at 44. Officer Stott, also states that "[t]he listed suspect did shoot his wife (listed victim), killing her and then shot himself in the head, killing him." *Id.* at 45.

Based on the death certificates and the police report, AAA issued a check to Carl Gonzales on April 28, 2009, in accordance with the terms of the life insurance policy. *Id.* at 3, ¶ 12. Unbeknownst to AAA in April 2009, police continued to investigate the homicide/suicide. *Id.* at ¶¶ 11, 13, and 14. Then, in February 2010, police completed a felony supplemental report which states that Wayne Gonzales was pronounced dead at the scene and that Katherine Gonzales was transported to a hospital where she later died. (Doc. 138-1) at 4. Officer J. Stott later confirmed in a January 2012 affidavit that Wayne Gonzales died before Katherine Gonzales died. *Id.* at 1.

Well over a year after the deaths and nearly a year after the police supplemental report was completed, AAA received a letter dated January 13, 2011, from an attorney who informed AAA for the first time "that it was being claimed that Wayne Gonzales had died before Katherine Gonzales, thus suggesting that the primary beneficiary had survived the insured and that her estate[, the Plaintiffs in this case,] should have received the Death Benefit." (Doc. 129-1) at ¶ 13.

B. *The Claims Against AAA*

Plaintiffs contend that since Katherine Gonzales survived Wayne Gonzales, her estate is entitled to the proceeds of the AAA life insurance policy. In Count I of the Amended Complaint for Negligence, Gross Negligence, Breach of Contract, Bad Faith Insurance Practice, Mandamus, and Punitive Damages (Amended Complaint), Plaintiffs allege that "AAA in bad faith and in gross breach of contract paid life insurance proceeds to the contingent beneficiary, Carl Gonzales." (Doc. 212) at ¶ 8. In Count II of the Amended Complaint, Plaintiffs allege that AAA "negligently failed to reasonably or prudently investigate whether Wayne [Gonzales] predeceased Katherine [Gonzales] although all knew or should have known Katherine J.

3

Gonzales was murdered by her husband Wayne Gonzales, who committed suicide…." *Id.* at ¶ 13.  In Count IV of the Amended Complaint, Plaintiffs allege that AAA violated the New Mexico Unfair Insurance Practices Act (UIPA) and the New Mexico Unfair Practices Act (UPA) by failing to properly investigate Carl Gonzales' claim for the life insurance proceeds.  *Id.* at ¶¶ 22 and 24.  AAA now moves for summary judgment on all of the claims asserted against it.  Plaintiffs oppose the Motion for Summary Judgment in its entirety.

C.  *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[1] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

---

[1] Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

*D.  Discussion*

   *1.  Count I:  Bad Faith and Breach of Contract Claims*

An insurer in New Mexico "'acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded.'" *Progressive Cas. Ins. Co. v. Vigil*, 2015 WL 258531 *4 (N.M. Ct. App.) (citation omitted).  "An insurer 'does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.'" *Id.* (citation omitted).  Unfounded or frivolous reasons for denying a claim are those reasons which constitute "an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim.'" *Am. Nat. Pro. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 12, 293 P.3d 954 (citation omitted).  An unfounded belief occurs, for example, when the insurer fails to undertake a reasonably appropriate investigation to evaluate a claim.  *Id.* at ¶ 13.

In New Mexico, "an insurance company is required to conduct such an investigation into the facts and circumstances underlying the complaint against its insured as is reasonable given the factual information provided by the insured or provided by the circumstances surrounding the claim…." *G & G Serv., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 23, 128 N.M. 434. Hence, the "duty to investigate does not exist in a vacuum; it must be prompted by events." *Salas v. Mountain States Mut. Cas. Co.*, 2007-NMCA-161, ¶ 33, 143 N.M. 113.  In other words, an insurer must be put on "some kind of notice" that a claim is "being made or could reasonably be expected" in order to trigger a duty to investigate.  *Id.*

Here, the essence of Plaintiffs' case against AAA is that AAA should have investigated Carl Gonzales' claim because of the circumstances of the deaths of Wayne and Katherine Gonzales.  It is undisputed that in April 2009 AAA had before it only the death certificates and

the initial police report.  As AAA correctly notes, in New Mexico, death certificates, like the ones in this case, are "prima facie evidence of the fact, place, date, and time of death and the identity of the decedent…." NMSA 1978, § 45-1-107(B) (2008 Repl. Pamp.).  Plaintiffs, nonetheless, argue that AAA should have undertaken an investigation, including an interview of Officer Stott, for several reasons.  Plaintiffs first observe that Wayne Gonzales' death certificate states that he died at home while Katherine Gonzales died at a hospital.  Plaintiffs contend that those facts, in conjunction with the fact that Wayne Gonzales died from a gunshot wound to the head, indicate that Wayne Gonzales died before Katherine Gonzales died.  Second, Plaintiffs point out that the initial police report does not include the times of the deaths.  Finally, Plaintiffs assert that AAA should have withheld payment of the insurances proceeds until a final police investigation was completed.

     Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that the evidence before AAA in April 2009 did not rebut the *prima facie* proof of time of death in the death certificates.  First, the places of death on the death certificates, alone, do not establish the times of the deaths.  Second, the statement that Wayne Gonzales died at home several hours after Katherine Gonzales died could indicate that Wayne Gonzales declined medical treatment.  Third, the fact that Wayne Gonzales died from a gunshot wound to the head does not necessarily mean that Wayne Gonzales died immediately and before Katherine Gonzales.  Fourth, the death certificates indicate that Katherine Gonzales was married when she died while Wayne Gonzales was already a widower at the time of his death, thereby supporting the conclusion that Katherine Gonzales died before Wayne Gonzales.  Fifth, the initial police report states that Wayne Gonzales killed his wife and then killed himself.  Sixth, the initial police report corroborates the sequence of deaths established by the death certificates.  Finally, there is

no evidence in the record that AAA was aware of a supplemental police investigation in April 2009. A reasonable jury considering these circumstances could find that, in April 2009, AAA could have determined that no further investigation into the deaths of Wayne and Katherine Gonzales was reasonably necessary. Hence, a reasonable jury could find that AAA's failure to investigate Carl Gonzales' claim did not provide a basis for an unfounded or frivolous belief that Carl Gonzales was entitled to the proceeds of the life insurance policy or for a breach of contract claim.

In addition, it is widely accepted that "an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims." *Crosby v. Crosby*, 986 F.2d 79, 83 (4th Cir. 1993). In fact, in New Mexico, when an insurer pays insurance proceeds in accordance with the insurance policy, "such payment shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract." NMSA 1978, § 59A-18-26 (2000 Repl. Pamp.). Moreover, New Mexico law states that an insurer must pay claims "promptly," and that an insurer will be assessed a penalty if the insurer does not pay the claim within 45 days after being furnished with proof of loss. NMSA 1978, § 59A-16-21(A) and (B) (2000 Repl. Pamp.).

Considering the above law, a reasonable jury, viewing the evidence in the light most favorable to Plaintiffs, could also find that (1) in April 2009, AAA did not have actual notice of a competing claim to the life insurance proceeds, and (2) AAA promptly paid Carl Gonzales the proceeds of the life insurance policy in good faith under the terms of the insurance policy. Thus, a reasonable jury could also find that under those circumstances, AAA's decision to pay the

proceeds of the life insurance to Carl Gonzales in April 2009 was not unfounded or frivolous and did not, therefore, breach the terms of the life insurance policy. Moreover, as a matter of law, under Section 59A-18-26, AAA was fully discharged from all claims when it paid Carl Gonzales the proceeds of the life insurance policy prior to receiving any notice from Plaintiffs that they were entitled to the proceeds. *See Loewer v. New York Life Ins. Co.*, 805 F.Supp. 956, 958 (M.D. Fla. 1992) (applying similar statute to facts like those in this case). In sum, AAA is entitled to summary judgment on the Count I claims for bad faith and breach of contract.

    *2. Count II: Negligent Failure to Investigate*

For the same reasons discussed above, a reasonable jury, viewing the evidence in the light most favorable to Plaintiffs, could find that the circumstances presented to AAA in April 2009 did not trigger AAA's duty to further investigate Carl Gonzales' claim. AAA is, therefore, entitled to summary judgment on the Count II negligence claim as well.

    *3. Count IV: The UIPA and UPA Claims*

        *a. The UIPA Claim*

Under the UIPA, insurers are prohibited from "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies…." NMSA 1978, § 59A-16-20(C) (2000 Repl. Pamp.). Plaintiffs do not present any evidence regarding how reliance on death certificates and a police report constitute a failure "to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies…." Consequently, as a matter of law, AAA did not violate the UIPA. AAA is entitled to summary judgment on the UIPA claim.

*b. The UPA Claim*

To invoke the UPA, a plaintiff must establish four elements: (1) that the defendant made a false or misleading representation; (2) that the defendant knowingly made the false or misleading representation in "'connection with the sale, lease, rental or loan of goods or services in the extension of credit or … collection of debts;" (3) this conduct "must have occurred in the regular course of the representer's trade or commerce;" and (4) "the representation must have been of the type that 'may, tends to or does, deceive or mislead any person.'" *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97 (citation omitted). Here, it is undisputed that AAA did not make any false or misleading statements nor did AAA do so in connection with the extension of credit or collections of debts. Accordingly, as a matter of law, AAA did not violate the UPA claim and that claim is, likewise, subject to summary judgment.

IT IS ORDERED that

1. Defendant AAA Life Insurance Company's Motion for Summary Judgment (Doc. 129) is granted; and

2. summary judgment is granted in AAA's favor on all of Plaintiffs' claims against it; and

3. Plaintiffs' claims against AAA will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE