IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF KATHERINE J.
GONZALES, SCOTT BOX, individually and
as Personal Representative, and RUSSELL
BOX, children of Katherine J. Gonzales,

    Plaintiffs,

vs.                                                                          Civ. No. 11-486 KG/GBW

GENERAL ELECTRIC COMPANY,
GENERAL ELECTRIC PENSION TRUST,
GE SAVINGS & SECURITY PROGRAM,
METROPOLITAN LIFE INSURANCE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Combined Motion and Supporting Memorandum for Summary Judgment of Metlife, GE, and the GE Plans (Motion for Summary Judgment), filed November 6, 2013. (Doc. 143). Plaintiffs filed a response on December 2, 2013, and Defendants Metropolitan Life Insurance (MetLife) and Defendants General Electric Company (GE), General Electric Pension Trust, and GE Savings & Security Program (collectively, the GE Defendants) filed a reply on December 16, 2013. (Docs. 147 and 149). Having reviewed the Motion for Summary Judgment, the accompanying briefs, and the administrative record, the Court grants the Motion for Summary Judgment and will dismiss with prejudice the Employee Retirement Income Security Act (ERISA) claims against MetLife and the GE Defendants, thereby terminating this lawsuit.

*A. Background*

This case arises from the March 2, 2009, murder of Katherine Gonzales by her husband, Wayne Gonzales, and Wayne Gonzales' suicide that same day. At the time of Wayne Gonzales' death, Wayne Gonzales participated in three GE ERISA plans (collectively, the Plans) administered by MetLife and GE. The remaining issue in this lawsuit is whether, after Wayne Gonzales' death, MetLife and GE wrongfully paid the Plans' benefits to Carl Gonzales, a contingent beneficiary, instead of to Katherine Gonzales' estate, the primary beneficiary's estate. Plaintiffs, in this case, are the Estate of Katherine Gonzales and Katherine Gonzales' children. The following summary of facts comes from the administrative record filed in this matter.

*1. The ERISA Plans*

The Plans at issue are the Life Insurance Plan, the Pension Plan, and the Savings & Security Program (Savings Program).

MetLife is the claim administrator and insurer for the Life Insurance Plan. MetLife Rec. 286. To name a beneficiary under the Life Insurance Plan, the Life Insurance Plan participant must complete a beneficiary designation form. MetLife Rec. 121. If a designated beneficiary dies before the Life Insurance Plan participant dies, then "the rights and interests of such beneficiary shall thereupon automatically terminate." GE Rec. 331. Life Insurance Plan benefits "are payable upon receipt of proof of claim." GE Rec. 337. As a claim administrator and insurer of benefits, MetLife "has the authority and responsibility to interpret the provisions" of the Life Insurance Plan. MetLife 310. "The nature of this authority and the discretion afforded" MetLife are contained in the Life Insurance Plan documents. *Id*.

The General Electric Pension Trust funds the Pension Plan which GE administers through a Pension Board. MetLife Rec. 287; GE Rec. 235. The Pension Plan requires that the Pension

Plan participant designate, in writing, a beneficiary who will receive Pension Plan benefits upon the death of the Pension Plan participant. GE Rec. 249; MetLife Rec. 201. Upon the death of the Pension Plan participant, the Pension Board, in its discretion, "treat[s] as conclusive evidence that any particular beneficiary was not in existence at the date of death of such [Pension Plan participant by] … proof deemed adequate by it that such beneficiary was not in existence at such date…." GE Rec. 250. Any named fiduciary, including the Pension Board, has "absolute discretion" in administering and applying the Pension Plan. GE Rec. 236, 262.

GE also administers the Savings Program through the Pension Board. MetLife Rec. 265; GE Rec. 094. A surviving spouse of a Savings Program participant is the primary beneficiary of the Savings Program. GE Rec. 091. However, a Savings Program "[p]articipant may designate a beneficiary or beneficiaries other than his or her spouse provided such spouse, if any, consents to any such designation." *Id.* "Upon the death of a [Savings Program participant] and upon receipt of proof deemed adequate by the Company of the identity and existence at the [Savings Program participant's] death of a spouse or validly designated beneficiary or beneficiaries the Securities and cash shall be delivered to the spouse or beneficiary as the case may be." *Id.* In addition, any named fiduciary, including the Pension Board, has "absolute discretion" in administering and applying the Savings Program. GE Rec. 095, 109.

*2. Wayne Gonzales' Designation of Beneficiaries*

In July 2006, Wayne Gonzales designated Katherine Gonzales as the primary beneficiary for all three Plans, and he designated Carl Gonzales as a contingent beneficiary. GE Rec. 052. The beneficiary designation form states that if the primary beneficiary dies before the plan participant dies, then the contingent beneficiary may receive the plan participant's benefits. *Id.* Both Wayne and Katherine Gonzales signed the beneficiary designation form. *Id.*

*3. Carl Gonzales' Claims*

On March 4, 2009, Carl Gonzales contacted GE to report the deaths of Wayne and Katherine Gonzales two days earlier. GE Rec. 039-040. On March 17, 2009, GE sent a letter to Carl Gonzales which indicated that (1) GE understood that "the beneficiary Kathy Gonzales" died the same day as Wayne Gonzales; and (2) benefits would be payable to Carl Gonzales as the contingent beneficiary. GE Rec. 026. GE also requested that Carl Gonzales send GE the original certified death certificates for Wayne and Katherine Gonzales, and other completed forms. GE Rec. 026-027.

On April 6, 2009, GE received from Carl Gonzales the death certificates and the requested completed forms. GE Rec. 017-018, 029-033. On April 9, 2009, GE forwarded the death certificates and the completed forms to MetLife. GE Rec. 036; MetLife Rec. 051-056.

Katherine Gonzales' death certificate shows that she died at 8:21 a.m. on March 2, 2009, as a result of "[m]ultiple gunshot wounds" caused by a homicide. GE Rec. 018. The place of death is listed as a hospital. *Id.* In addition, the death certificate notes that at the time of death Katherine Gonzales was married to Wayne Gonzales who was the surviving spouse. *Id.*

Wayne Gonzales' death certificate shows that he died at 1:37 p.m. on March 2, 2009, as a result of a gunshot wound to the head caused by his suicide. GE Rec. 017. The place of death was his residence. *Id.* Moreover, the death certificate notes that at the time of death Wayne Gonzales was already widowed and there was no surviving spouse. *Id.*

On April 15, 2009, MetLife approved the payment of the Life Insurance Plan benefits to Carl Gonzales. MetLife Rec. 049-050. On May 9, 2009, GE paid Carl Gonzales the benefits from the Pension Plan and Savings Program. GE Rec. 036-037.

*4. Plaintiffs' Claims*

On July 8, 2010, more than a year after the deaths of Wayne and Katherine Gonzales, GE received a letter from Plaintiffs' counsel requesting information on the retirement benefits of Wayne and Katherine Gonzales.  GE Rec. 019.  Then, on January 24, 2011, GE received a letter from Plaintiffs' counsel notifying GE, for the first time, that Wayne Gonzales died before Katherine Gonzales, thus making her estate the beneficiary of the Plans.  GE Rec. 015-016.  GE forwarded the January 24, 2011, letter to MetLife which received it on February 10, 2011.  MetLife Rec. 045-046.

On February 11, 2011, MetLife responded to Plaintiffs' counsel by letter.  MetLife Rec. 043-044.  In that letter, MetLife denied Plaintiffs' claim explaining that when it paid the life insurance benefits to Carl Gonzales on April 15, 2009, MetLife had before it the death certificates which "clearly indicated" that Katherine Gonzales predeceased Wayne Gonzales.  MetLife Rec. 043.  Hence, MetLife determined that the Life Insurance Plan benefits were payable to the contingent beneficiary.  *Id.*  Additionally, MetLife had no notice of an adverse claim at the time it paid the life insurance benefits to Carl Gonzales.  MetLife Rec. 044.  MetLife concluded that under those circumstances it paid the Life Insurance Plan benefits to Carl Gonzales "in good faith" and, thereby "fully satisfied" its liability on the claim.  *Id.*  MetLife then informed Plaintiffs of their right to appeal that determination.  *Id.*  MetLife sent a copy of this letter to GE.  GE Rec. 013-014.

On February 18, 2011, GE also responded to Plaintiffs' counsel.  Like MetLife, GE explained that the official death certificates indicated that Katherine Gonzales died before Wayne Gonzales.  GE Rec. 012.

On March 7, 2011, MetLife received another letter from Plaintiffs' counsel. MetLife Rec. 037-042. Plaintiffs' counsel attached to that letter excerpts from a February 26, 2010, supplemental police report on the deaths of Wayne and Katherine Gonzales. MetLife 040-042. That report confirmed that Wayne Gonzales died before Katherine Gonzales. *Id*. Plaintiffs' counsel also indicated in the letter that in New Mexico a death certificate is not evidence of time of death. MetLife Rec. 039.

On March 16, 2011, MetLife responded to Plaintiffs' counsel as follows:

> As previously stated in our February 11, 2011 initial denial letter, MetLife made payment pursuant to the documents provided at the time of claim payment, without notice of any adverse claim. In fact, MetLife made payment to the Contingent Beneficiary on April 15, 2009, almost two years prior to receiving the Police Report. Therefore, MetLife made payment in good faith and our liability on this claim has been fully satisfied.

MetLife Rec. 035. MetLife forwarded a copy of its letter to GE. GE Rec. 004-005.

Then, on April 1, 2011, Plaintiffs' counsel sent a letter to GE requesting documentation regarding the Savings Program. GE Rec. 006. Plaintiffs' counsel noted that his "office represents the only lawful heirs of those two individuals…." *Id.* On April 11, 2011, GE responded to the April 1, 2011, letter by stating that it paid the Savings Program benefits to Carl Gonzales as the contingent beneficiary. GE Rec. 001.

*5. The Amended Complaint for Negligence, Gross Negligence, Breach of Contract, Bad Faith Insurance Practice, Mandamus, and Punitive Damages (Doc. 212)*

Plaintiffs bring ERISA claims against MetLife and the GE Defendants under 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(1)(B) allows an ERISA beneficiary to bring a civil lawsuit "to recover benefits due to him under the terms of his plan." Plaintiffs allege that MetLife and the GE Defendants wrongfully paid the Plans' benefits to Carl Gonzales as the contingent beneficiary. Plaintiffs contend that because a murder/suicide occurred MetLife and the GE Defendants should have taken steps to determine that Wayne Gonzales predeceased Katherine

6

Gonzales and, thus, should have paid the Plans' benefits to Katherine Gonzales' estate. MetLife and the GE Defendants now move to dismiss the ERISA claims on the basis that MetLife and GE's decisions to pay the Plans' benefits to Carl Gonzales were not arbitrary and capricious, because they were supported by substantial evidence in the administrative record, reasonable, and made in good faith.

B. Legal Standards

    *1. Standard of Review*

In an ERISA case like this one, where a trial is unnecessary, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[1] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan,* 605 F.3d 789, 796 (10th Cir.2010) (quotation omitted). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations or to construe the terms of the plan, the court reviews the administrator or fiduciary's decisions under an arbitrary and capricious (or abuse of discretion) standard. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008); *see Weber v. GE Group Life Assurance Co.,* 541 F.3d 1002, 1010 n. 10 (10th Cir. 2008) (arbitrary and capricious standard is equivalent to abuse of discretion standard). The parties do not dispute

---

[1] The Court notes that Plaintiffs incorrectly apply the Fed. R. Civ. P. 56(a) summary judgment standard in their response to the Motion for Summary Judgment.

that the Plans at issue granted such discretion to MetLife and GE.  *See* GE Rec. 095, 109, 236, 250, 262; Met Life Rec. 310.  Consequently, an arbitrary and capricious standard applies to this Motion for Summary Judgment.

      The Tenth Circuit describes the arbitrary and capricious standard as follows:

> "Using the arbitrary and capricious standard, we ask whether the administrator's decision was reasonable and made in good faith." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.,* 663 F.3d 1124, 1133 (10th Cir.2011) (quotation marks omitted).  "We will uphold the decision of the plan administrator so long as it is predicated on a reasoned basis, and there is no requirement that the basis relied upon be the only logical one or even the superlative one." *Id.* at 1134.  Generally, "[w]e look for substantial evidence in the record to support the administrator's conclusion, meaning more than a scintilla of evidence that a reasonable mind could accept as sufficient to support a conclusion." *Id.* (quotation marks omitted).

*Benson v. Hartford Life & Acc. Ins. Co.*, 511 F. App'x 680, 684 (10th Cir. 2013).

      *2. Conflict of Interest*

      Because MetLife acts as both the claims administrator and payor of benefits for the Life Insurance Plan, the Court "must weigh the conflict 'as a factor in determining whether there is an abuse of discretion,' according it more or less weight depending on its seriousness." *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1158 n. 1 (10th Cir.2010) (*quoting Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115 (2008)).  The seriousness of a conflict of interest is "proportionate to the likelihood that the conflict affected the benefits decision." *Graham v. Hartford Life & Acc. Ins. Co.,* 589 F.3d 1345, 1358 (10th Cir. 2009).  Here, Plaintiffs do not argue that MetLife's conflict of interest affected its benefits decision.  Moreover, the fact that MetLife paid the Life Insurance Plan benefits, albeit to an allegedly incorrect beneficiary, demonstrates that any conflict of interest was at the most *de minimus*.

### 3. Evidence Considered by the Court

"This Circuit, along with the majority of other federal courts of appeals, has held that in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the administrative record--the materials compiled by the administrator in the course of making his decision." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) (internal quotation marks and citations omitted). "In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992). "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision." *Id.* at 381.

### C. Discussion

MetLife and the GE Defendants assert that MetLife and GE did not act in an arbitrary and capricious manner when the paid the Plans' benefits to Carl Gonzales in April and May 2009. Plaintiffs do not agree with that assertion. They argue first that the February 2010 supplemental police report as well as a January 6, 2012, affidavit by the officer on the scene of the homicide/suicide demonstrate that Katherine Gonzales survived Wayne Gonzales. MetLife and GE, however, did not have either the February 2010 supplemental police report or the officer's affidavit when they decided to pay the Plans' benefits to Carl Gonzales in April and May 2009. In fact, MetLife and GE were not aware of the supplemental police report until March 2011, approximately two years after they paid the benefits to Carl Gonzales. Moreover, the officer's

affidavit was not a part of the administrative record and did not exist until after Plaintiffs filed this lawsuit. Since the Court must evaluate the administrative record as it was in April and May 2009, it is precluded from considering the supplemental police report and the officer's affidavit in deciding this Motion for Summary Judgment.

Next, Plaintiffs argue that MetLife and GE were "put on notice of suspicious circumstances concerning" the deaths of Wayne and Katherine Gonzales, and that MetLife and GE should have, therefore, made a reasonable, good faith investigation into the deaths of Wayne and Katherine Gonzales before paying Carl Gonzales benefits under the Plans. (Doc. 147) at 3. Plaintiffs cite *Weed v. Equitable Life Assur. Soc. of U.S.*, 288 F.2d 463 (5th Cir. 1961); and *Doe v. American General Life Insurance Co. of N.Y.*, 139 Misc.2d 80, 526 N.Y.S.2d 904 (Sup. Ct. Bronx 1988) to support that argument.

The Fifth Circuit in *Weed* held that "[p]ayment in good faith to the beneficiary of record by the insurance company without knowledge of facts vitiating the claim will prevent a second recovery by another claimant." 288 F.2d at 464. That holding actually favors MetLife and the GE Defendants. Under *Weed*, Plaintiffs' claims fail, because MetLife and GE did not have knowledge of facts vitiating Carl Gonzales' claim when they paid Carl Gonzales the benefits under the Plans.

Furthermore, the Fifth Circuit does not impose a duty on ERISA administrators to conduct a reasonable, good faith investigation of a claim. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298 (5th Cir. 1999). Rather, a court must "focus on whether the record adequately supports the administrator's decision." *Id. See also Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 394 n. 8 (3rd Cir.2000) ("Our focus on process should not be read to require an additional duty to conduct a good faith, reasonable investigation. That is, we are not holding that

Reliance Standard had a duty to gather more information, merely that the decision might have been arbitrary and capricious given the information available.").

*Doe* is also distinguishable from this case. In *Doe*, the insurer reasonably delayed payment of benefits to the beneficiary pending an investigation into the beneficiary's role in killing the insured. 526 N.Y.S.2d at 905. The court in *Doe* recognized that a beneficiary who kills the insured cannot collect insurance benefits from the insured's life insurance policy. *Id.* Plaintiffs do not allege in this case that a beneficiary killed Wayne Gonzales. In sum, Plaintiffs' argument that MetLife and GE failed to conduct a good faith, reasonable investigation into the deaths of Wayne and Katherine Gonzales has no merit.

Plaintiffs further contend that since MetLife and GE were "put on notice the deaths were under suspicious circumstances," MetLife and GE should have instituted an interpleader under Rule 1-022, NMRA 1998 while investigating Carl Gonzales' claims. (Doc. 147) at 4. As discussed above, ERISA administrators are not obligated to conduct a reasonable, good faith investigation of a claim. Moreover, the administrative record shows that in April and May 2009, MetLife and GE had only the death certificates which indicated that Katherine Gonzales died before Wayne Gonzales. Reliance on an official government document like an official death certificate is permissible. *See Hancock v. Metropolitan Life Ins. Co.*, 590 F.3d 1141, 1156 (10th Cir. 2009) (ERISA case); NMSA 1978, § 45-1-107(B) (2008 Repl. Pamp.) (death certificates are "prima facie evidence of the fact, place, date, and time of death and the identity of the decedent…."). In addition, MetLife and GE did not have knowledge of any competing claim until possibly as early as July 2010, more than a year after they paid the benefits to Carl Gonzales. Because MetLife and GE were unaware of a competing claim for the benefits when

11

they decided to pay the benefits to Carl Gonzales, MetLife and GE did not have a basis for instituting an interpleader in April or May 2009.

Finally, Plaintiffs argue that MetLife and the GE Defendants are liable to Plaintiffs under the New Mexico Unfair Practices Act.  This Motion for Summary Judgment, however, concerns only the ERISA claims.  Furthermore, on April 27, 2015, the Court dismissed the state claims brought against MetLife and the GE Defendants.  (Doc. 232).

Notably, Plaintiffs do not respond to MetLife and the GE Defendants' argument that a good faith payment of benefits without knowledge of a competing claim discharges the payors of the benefits from subsequent liability.  It is widely held "that an insurer is discharged from all subsequently liability when it makes good faith payments to a purported beneficiary without notice of any competing claims."  *Crosby v. Crosby*, 986 F.2d 79, 83 (4th Cir. 1993) (ERISA case).  *See also Weed*, 288 F.3d at 464; *Wagner v. Metro. Life Ins. Co.*, 2011 WL 2638143, at *12-13 (S.D.N.Y.), *report and recommendation adopted,* 2011 WL 2623390 (S.D.N.Y.).  In this case, substantial evidence in the administrative record clearly supports the conclusion that MetLife and GE made good faith payments to Carl Gonzales, without knowledge of a competing claim.  Accordingly, MetLife and the GE Defendants cannot now be liable to Plaintiffs.

*D. Conclusion*

The Court finds that there was substantial evidence in the administrative record in April and May 2009 to support MetLife and GE's decisions to promptly pay Carl Gonzales the benefits under the Plans.  *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, supra,* 555 U.S. 285, 300 (2009) (purpose of ERISA is to '"ensure that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."') (quoting *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown,* 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J.,

dissenting)).  MetLife and GE's decisions to pay the benefits to Carl Gonzales were also reasonable and made in good faith.  In sum, those decisions were not arbitrary and capricious.  The Court will, therefore, grant the Motion for Summary Judgment and dismiss the ERISA claims.

IT IS ORDERED that

1. the Combined Motion and Supporting Memorandum for Summary Judgment of Metlife, GE, and the GE Plans (Doc. 143) is granted;

2. judgment will be entered in favor of MetLife and the GE Defendants;

3. the ERISA claims against MetLife and the GE Defendants will be dismissed with prejudice; and

4. this case will be terminated.

_____
UNITED STATES DISTRICT JUDGE